### IN re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

### No. MDL–150–WPG.

United States District Court,
C.D. California.

Feb. 9, 1984.

Blecher, Collins & Weinstein by Maxwell M. Blecher, Hong Dea, and Law Offices of Gary W. Hoecker by Gary W. Hoecker, M. Brian McMahon, Los Angeles, Cal., for City of Long Beach.

Office of the Atty. Gen., John Van De Kamp by Michael Ivan Spiegel, Deputy Atty. Gen., Dept. of Justice, State of Cal., San Francisco, Cal., and Owen Lee Kwong, Deputy Atty. Gen., Dept. of Justice, State of Cal., Los Angeles, Cal., for State of Cal.

Hughes, Hubbard & Reed by Otis Pratt Pearsall, Matthew T. Heartney, New York City, and Thomas H. Reilly, Atlantic Richfield Co., and Hughes, Hubbard & Reed by Ronald C. Redcay, Los Angeles, Cal., for Atlantic Richfield Co.

McCutchen, Black, Verleger & Shea by Philip K. Verleger, Los Angeles, Cal., and Robert L. Norris, Exxon Co. U.S.A., Houston, Tex., for Exxon Corp.

Donovan, Leisure, Newton & Irvine by Andrew J. Kilcarr, Maureen O'Bryon, Washington, D.C. and Charles F. Rice, Asst. Gen. Counsel, New York City, for Mobil Oil Corp.

Adams, Duque & Hazeltine by Robert M. Mitchell, Los Angeles, Cal., for Phillips Petroleum Co.

Howrey & Simon by William Simon, Washington, D.C., for Shell Oil Co.

Pillsbury, Madison & Sutro by Anthony P. Brown, San Francisco, Cal., for Standard Oil Co. of California.

Leslie C. Randall, Texaco, Inc., Los Angeles, Cal., and R.D. Wilson, Texaco, Inc., White Plains, N.Y., for Texaco, Inc.

Brobeck, Phleger & Harrison by John Sparks, Darryl Snider, Michael W. Bien, San Francisco, Cal., for Union Oil Co.

Robert Hight, Sacramento, Cal., for State Lands Comm'n.

Kinsella, Boesch, Fujikawa & Towle by Philip W. Boesch, Jr., Michael D. Howald, Los Angeles, Cal., for Dow-Jones.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

### I. INTRODUCTION

The present controversy in these consolidated cases pits the public interest in open court proceedings against the private interest in the confidentiality of allegedly commercially sensitive information made available to opposing litigants by court process. This tension is not uncommon in complex civil litigation. At the center of the conflict are umbrella protective orders frequently entered to facilitate discovery in large cases. *See, e.g., In re Agent Orange Product Liability Litigation,* 98 F.R.D. 539 (E.D.N.Y.1983); *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866 (E.D.Pa.1981).

The protective order in these cases was initially entered in May 1974 by Judge Clarie of the District of Connecticut. I adopted it as part of Pretrial Order ("P.T.O.") No. 2 in January 1977, four months after the consolidation of the several cases by the Judicial Panel on Multidistrict Litigation.[1] The consolidated cases, known as MDL-150, are complex civil antitrust actions involving the oil industry. The cases fall into two distinct classes, and P.T.O. No. 2 applies to both. One group, the *"State"* cases, is comprised of actions brought by the attorneys-general of several states against most of the major oil companies.[2] The plaintiffs charge a nationwide, indeed, a worldwide, conspiracy to create artificial shortages and to raise the prices of retail petroleum products, the alleged effects of which are commonly known as the "oil crisis" of the mid-1970's. The plaintiffs in the other set of cases, the State of California and the City of Long Beach, are owners of oil fields and sell their crude oil to the five defendant-integrated oil companies.[3] In these actions, dubbed *"Long Beach,"* the plaintiffs allege a conspiracy to depress the prices of crude oil in Long Beach over a period stretching from the early 1960's to the late 1970's.

Presently, in both the *State* and *Long Beach* cases, there are numerous pending motions by defendants, and a few by plaintiffs, for partial and entire summary judgment and judgment on the pleadings. Some of these motions were filed as early as 1979, while the briefing on other sum-

---

**1.** The consolidation order is reported as *In re Petroleum Products Antitrust Litigation,* 419 F.Supp. 712 (J.P.M.L.1976).

**2.** Initially, the plaintiff states were: Florida, Connecticut, Kansas, California, Arizona, Oregon and Washington. Florida and Connecticut filed their actions in 1973. The rest came in 1974–1977. Kansas and Connecticut are no longer parties. The defendant corporations now are: Mobil Oil, Standard Oil of Indiana, Atlantic Richfield, Gulf, Standard Oil of California, Texaco, Phillips Petroleum, Union Oil, Exxon and Shell.

**3.** The companies are: Texaco, Exxon, Union, Mobil, Shell, Atlantic Richfield and Standard Oil of California.

mary judgment motions is not yet complete. In June 1982, the *Long Beach* plaintiffs filed their Statement of the Case, and in January 1983, the *State* plaintiffs filed their Initial Pretrial Brief.

In April 1982, this court granted the motion of Dow Jones, Inc., publisher of the *Wall Street Journal*, to intervene for the purpose of seeking modification of the protective order in both the *Long Beach* and the *State* cases. I declined, however, to rule on Dow Jones' motion for declassification at that time and have so declined on four occasions since then, each time inviting the intervenor to renew its motion at the time of the formal hearings on the motions for summary judgment in the *Long Beach* case. More recently, California, Arizona, Florida, Oregon and Washington have moved for an order of declassification in the *State* cases. The *State* plaintiffs seek declassification[4] of all summary judgment motions and memoranda in support and in opposition (including attached exhibits and affidavits) and the plaintiffs' Initial Pretrial Brief (including Supplements and documents cited therein) filed under seal in the *State* cases. Intervenor Dow Jones asks that I lift the seal on: all summary judgment motions, memoranda in support and in opposition in both the *State* and *Long Beach* cases (including declarations and exhibits attached thereto or referenced therein); the plaintiffs' Pretrial Statement in the *Long Beach* case (including attached and referenced items, as above); and the plaintiffs' Initial Pretrial Brief in the *State* cases (with all attached and referenced exhibits and declarations). Both movants contend that the public has a constitutional and common law right of access to those materials and that most of the information under seal is not worthy of protection under the terms of the protective order. The defendants, of course, argue the opposite.

Dow Jones' most recent "continued" motion and the *State* plaintiffs' motions were heard together on November 17, 1983. The central question before this court—to what extent may a previously imposed protective order be lifted in order to give the public access to civil pretrial materials—has not been decided in this circuit. As is set forth below, I conclude that declassification of most of the subject documents is appropriate at this time.

## II. THE PROTECTIVE ORDER IN MDL-150

On May 21, 1974, at the inception of the two cases that grew into MDL-150, Judge Clarie granted an oil company defendant's motion for a protective order under Fed.R. Civ.P. 26(c)(7) "to prevent the imminent public exposure of … confidential trade secrets and information of commercial significance to competitors." This is the order that governs today. Under it, any portions of documents, depositions, or interrogatory answers may be designated "Confidential Material" by the party providing the information or by a party to whom the information relates. Confidential information may be used only for purposes of the instant litigation, and upon the termination of the litigation all such material and any copies must be returned to the party that produced it. The order provides for contemporaneous objections to the designation of something as "Confidential." If, after receiving a notice of objection, the designating party does not agree to declassification, the objecting party may move the court for an order of declassification. A primary by-product, if not a purpose, of the order was to facilitate discovery by avoiding document-by-document battles over protection. Thus, the order contemplates that the judge infrequently will be called upon to make individual Rule 26(c)(7) determinations. Much discretion lies with the litigants regarding the quantity and nature of material filed under seal or designated "Confidential" but not filed.

---

**4.** The plaintiffs first served a "Notice of Objection" on ten defendants in January 1983, wherein plaintiffs made the request now addressed to the court. The protective order prescribes the procedure for objecting to a filing made under seal. *See* section II, below.

It is impossible to tell what showing was made or what standard Judge Clarie applied when he granted the motion for a protective order in 1974. In 1977, when I incorporated his order into P.T.O. No. 2, the plaintiff states apparently agreed to closure, and there was no controversy.

The discovery disputes in MDL–150 up to now have had little to do with the protective order or with the propriety of filing materials under seal. Both plaintiffs and defendants have made "Confidential" designations, although those of the latter are much more numerous. The majority of docket filings over seven years have not been sealed. However, in recent years, as the cases have progressed into the summary judgment phase, the parties, and particularly the defendants, have filed many legal memoranda—as opposed to the raw fruits of discovery—under seal. Certainly, some of these summary judgment papers incorporate business data as well as legal arguments, but as the summary judgment motions have not yet been decided, this court still is not ready to determine the extent to which that business information is innocuous, inculpatory or commercially sensitive.

## III.  INTERESTS IN ACCESS

### A.  *The General Policy of Openness*

American courts long have recognized a general right to inspect and copy public records, including judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 & nn. 7, 8, 98 S.Ct. 1306, 1311 & nn. 7, 8, 55 L.Ed.2d 570 (1978).[5] Thus, the Ninth Circuit has held that a first amendment right of access attaches to pretrial documents in criminal cases. *Associated Press v. United States District Court,* 705 F.2d 1143 (1983) (reversing trial court order sealing all documents in a criminal case). The law is less clear with respect to civil pretrial materials. *Compare*

*Tavoulareas v. The Washington Post,* 724 F.2d 1010 (D.C.Cir.1984), and *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866 (E.D.Pa.1981), *with Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165 (6th Cir.1983). As is discussed below, these decisions are conflicting with regard to the scope of the right in civil cases and whether it is based upon the common law or derives only from the Federal Rules of Civil Procedure.

Whether stemming from the Federal Rules, the common law or the Constitution, the general presumption of open court records and proceedings would seem to serve the same purpose: "assuring freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (plurality opinion). In concurring, Justice Brennan wrote, "public access to court proceedings is one of the numerous 'checks and balances' of our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" *Id.* at 592, 100 S.Ct. at 2835 (quoting *In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1943)). The interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern.

### B.  *The Public Interest in This Litigation*

The cases before this court, both *State* and *Long Beach,* present many issues of fact and law. The *State* plaintiffs allege a conspiracy among some of the world's largest enterprises to raise and stabilize the retail prices of gasoline beginning in 1958 and continuing to 1981. One of the charges is that defendants' collusion on the

---

**5.** The Federal Rules of Civil Procedure contemplate that documents filed with the court be open generally to the public. Rule 5(d) provides that all papers served upon a party after the complaint must be filed with the court unless the court otherwise orders. Clerks are instructed to make any court record available to anyone that asks for it, unless the record is filed under seal or disclosure is prohibited by statute. *Administrative Office of the United States Courts,* 4A GUIDE TO JUDICIAL POLICIES AND PROCEDURES § 201.3 (1980).

international front was a substantial cause of the shortage experienced in this country around the time of the Arab oil embargo in 1973 and later. The *State* plaintiffs also allege that the major integrated oil companies conspired on the domestic front to drive independent gasoline retailers out of business. If these charges prove true, the defendants' illegal conduct has affected the lives of all Americans. If these allegations are false, public officials have wasted many millions of dollars of taxpayers' money in prosecuting fruitless cases for nearly a decade.

While less momentous, the conspiracy alleged by the *Long Beach* plaintiffs would be of significant concern, if proved, to the citizens of California. If the charges prove true, state and local governments have been cheated out of many millions of dollars of revenue owed for the exploitation of public resources. If the defendants' counterclaims succeed, public officials will have been shown to have abused their discretion in the management of public resources to the detriment of the taxpayers as well as the defendants. Certainly, the public has an interest in learning of the factual and legal contentions in both cases.

. It is possible that neither case will go to trial, and thus it is possible that some of the most damning of plaintiffs' charges never will be tested by the evidence. At the summary judgment stage of the litigation, the public interest in access is every bit as strong as it would be at trial.

The rationale for public access is especially apropos, it seems, when the plaintiffs' lawyers are public officials. In MDL–150, the plaintiffs are represented by the attorneys-general of Arizona, California, Florida, Oregon and Washington, as well as by private firms selected by government officials. In light of the cost of the litigation thus far, and considering the fact that the cases have been in court for nearly ten years, the performance of the counsel as well as of the judge ought to be subject to public scrutiny. While the courtroom door has always been open, much of the information needed to understand the proceedings lies in documents filed under seal.

## C. *Nature of the Materials Now Under Seal*

It is true, as the defendants point out, that most of the docket filings in MDL–150 have not been designated "Confidential." However, it also is true that what is sealed constitutes, overall, the most significant aspects of the litigation: how the plaintiffs intend to prove their cases and why they may or may not be able to show actionable wrongdoing. Most all of the memoranda and exhibits connected with the pending motions for summary judgment, as well as the plaintiffs' pretrial briefs, are sealed.

Some of the briefs contain the proponents' interpretations of historical events in the oil industry, of meetings and conversations that are alleged to have involved price fixing, of the effects of federal regulations on the prices and supply of petroleum products, and of the effects of recent developments in antitrust law on the viability of plaintiffs' damage claims. Certainly, public disclosure of these types of arguments would not adversely affect defendants' trade secret interests, competitive positions, or privacy rights. On the other hand, some of the briefs and exhibits discuss defendants' refinery capacities, the inter-refinery values of crude oil and information concerning defendants' marketing plans in the 1970's. It may be, as Dow Jones and the plaintiffs contend, that most of the data in this latter group are so stale as to have little, if any, commercial significance and that even when current, defendants shared this data with trade associations (such as the American Petroleum Institute) and the trade press (such as *Platt's Oilgram*). Defendants argue that an astute observer could derive the companies' current strengths, weaknesses or strategies from even old information. Yet, defendants do not specify which documents remain sensitive irrespective of age.

At this juncture, it is clear that some of the sealed information never would have qualified for protection under the terms of

P.T.O. No. 2 or Rule 26(c)(7). It is quite likely that most of the other sealed documents have lost their character as commercially sensitive due to the passage of time.

### D. *Equipoise*

Defendants urged at one time that declassification should occur only when the materials are in "equipoise," that is, that the seal should be lifted only when a balanced picture of the controversies would be disclosed. There is some doubt in my mind as to whether "equipoise" is a proper consideration for a court in deciding a motion to declassify. We are not concerned here with any danger of prejudicial pretrial publicity, for trial does not loom on the horizon. Nor is it suggested that defendants would suffer the kind of "embarrassment" against which Fed.R.Civ.P. 26(c) may protect a party. It is not the duty of federal courts to accommodate the public relations interests of litigants.[6] In any event, it seems that a rough balance has been attained. Defendants have filed approximately fifty motions for summary judgment, including extensive memoranda in support and exhibits thereto. Plaintiffs have filed multi-volume initial pretrial briefs, attaching a multitude of exhibits, as well as responses to the defendants' motions. Thus, both sides have "fired their best shots" in stating their positions. Therefore, declassification need not be delayed on the ground that "equipoise" is lacking.

**6.** In *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir.1983), the opinion noted:

... [T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public ... cannot be accommodated by courts without seriously undermining the tradition of an open judicial system. Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know. In such cases, a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records.

## IV. BASIS FOR ORDERING DECLASSIFICATION

The preceding section sets forth the principle that adjudication is generally to be conducted in public and the primary reasons why the instant litigation should be no exception. As has been noted, the question of when the public access interest may outweigh the interest in confidentiality of pretrial documents in civil cases is undecided in this circuit. The following discussion illustrates that the basis of the access right, and hence its strength, may vary depending upon the stage of the proceedings and whether they are criminal or civil.

### A. *The Federal Rules and Judicial Discretion*

■ Rule 26(c)(7) provides that upon a showing of good cause, a court may order that trade secrets, confidential research or other commercial information produced during discovery be protected from public disclosure.[7] The result of such an order is to place court records under seal.

■ A trial judge has discretion in the granting of a protective order. *See generally* 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2036 (1970 & Supp.1983). This rule reflects the principle that "every court has supervisory power over its own records and files." *Warner Communications, supra,* 448 U.S. at 598, 98 S.Ct. at 1312. Hence, the matter of whether a protective order, once

**7.** While the Rule refers to protection from "annoyance, embarrassment, oppression or undue burden or expense," it has been held that Rule 26(c)(7) protects against competitive disadvantages as well. *E.g. Vollert v. Summa Corp.*, 389 F.Supp. 1348 (D.Haw.1975); *Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y.1973). The good cause requirement is met by a showing that disclosure will work a clearly defined, specific and serious injury. *See, e.g., United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421 (W.D.N.Y.1981); *Essex Wire Co. v. Eastern Elec. Sales Co.*, 48 F.R.D. 308 (E.D.Pa.1980).

issued, should be lifted may be "left to the sound discretion of the trial court." *Krause v. Rhodes,* 671 F.2d 212, 219 (6th Cir.1982).

In granting an umbrella protective order, the judge delegates to the litigants significant discretion to decide what shall be sealed. This is, in fact, contemplated by such an order: "If a judge, magistrate, or special master had to rule upon countless invocations of Rule 26(c)(7), the progress of complex cases would be severely impeded." *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866, 879 n. 18 (E.D.Pa.1981). A problem arises if it later appears that the parties have abused their authority to designate documents "Confidential" or that, for some other reason, some of the sealed information should not legitimately remain closed to the public.

■ In these circumstances, it would seem that a balancing must take place between the interests in access and the interests in confidentiality. The weight to be accorded each may vary depending upon what purposes the documents serve in litigation. For example, the District of Columbia Circuit recently held that as to filed documents that have never been submitted into evidence, read into the record or submitted in connection with a pretrial motion, the public access interest is relatively weak and is grounded only in the Federal Rules—it does not derive from either the first amendment or the common law. *Tavoulareas v. The Washington Post,* 724 F.2d 1010 at 1016 (D.C.Cir.1984); *see id.* at 1012 n. 2. Thus, the interest in access to such materials can be outweighed by a less than strenuous showing that declassification would endanger privacy rights or trade

secrets. *See id.* at 1024. The public access interest in materials that do play a part in adjudication, such as the materials here at issue, is stronger: courts have found the interest to be based on the common law and, at least in criminal cases, on the first amendment.

## B. *The First Amendment*

In arguing that the first amendment right of access should apply to civil as well as criminal proceedings, Dow Jones and the *State* plaintiffs urge this court to adopt the three-part balancing test set out in *Associated Press, supra,* 705 F.2d 1143, 1146 (9th Cir.1983). If I were to do so, the documents at issue could not constitutionally remain sealed unless there appeared to be a substantial probability: (1) of irreparable damage to a defendant's right to a fair trial or other constitutionally protected interest; (2) that alternatives to confidentiality will not protect adequately that right; and (3) that sealing the documents will be effective in protecting against the perceived harm. *See id.*

The Supreme Court has not held that the Constitution provides a public right of access to civil proceedings, trials or documents.[8] Lower courts considering the question of access to documents have thus far declined to find such a right based on the first amendment, in part due to the Court's *Warner Communications* decision. 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). There, Warner sought to copy the Watergate tapes used as evidence in a criminal trial. Transcripts of the evidence had been made available in full to the press and the public, and the trial judge had allowed the media to listen

**8.** *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) held that the first amendment implicitly guarantees a public right to attend criminal trials. Justice Stewart stated that the first amendment "clearly gives the press and the public a right of access to trials themselves, civil as well as criminal." *Id.* at 599, 100 S.Ct. at 2839 (Stewart, J., concurring). *In Press Enterprise Co. v. Superior Court,* —— U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d —— (1984), the Court extended the first amendment right of access to voir dire proceedings in criminal cases. It has been noted that the policy considerations and history supporting a first amendment right of access to criminal proceedings apply as well in the civil context. *See In re Iowa Freedom of Information Council,* 724 F.2d 658 at 661 (8th Cir.1983); *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1178–79 (6th Cir.1983).

to the tapes. The Supreme Court found that "[t]here is no question of a truncated flow of information to the public," *id.* at 609, 98 S.Ct. at 1318, and the Court rejected Warner's argument that the first amendment secured its right to copy, and disseminate copies of, the tapes. A "crucial fact" was that Warner's request for physical access would "require a court's cooperation in furthering [its] commercial plans." *Id.* at 602–03, 98 S.Ct. at 1314–15.

The *Tavoulareas* court interpreted *Warner Communications* to hold that there is no constitutional right to copy and disseminate judicial records or evidence used at trial. 724 F.2d at 1017. The *Zenith* court opined that *Warner Communications* held that the first amendment does not establish a right to inspect and copy materials and exhibits used in open court proceedings. 529 F.Supp. at 913. A more narrow reading of the Court's holding certainly can be imagined, and such a reading would be more consistent with the Ninth Circuit's decision in *Associated Press, supra.* Nevertheless, it seems more appropriate to base the decision granting the motions to declassify on common law, as opposed to constitutional, grounds.

### C. The Common Law

In *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866 (E.D.Pa.1981), a decision upon which the defendants here rely extensively, Judge Becker faced a similar challenge to an almost identical protective order. The *Zenith* opinion reviews the common law right of access to "judicial records" and finds that the right attaches, presumptively, to: (1) materials filed with the court, unless filed under seal pursuant to court order; (2) transcripts of open court proceedings (and portions of documents read in open court, even if filed under seal); (3) material that is the subject of an evidentiary ruling (even if originally sealed); (4) material referred to at a hearing, to the extent that the reference is more specific than general;

and (5) material filed under seal that has become the subject of a dispositive ruling and published opinion. *Id.* at 895–901. The rationale behind this roster is that courts have an obligation to explain their decisions and therefore to allow the public an opportunity to assess the correctness of those rulings. *See id.* at 901. *See also Tavoulareas, supra,* 724 F.2d at 1016. Thus, under the *Zenith* view, common law public access interests need not be considered when entering a Rule 26(c)(7) protective order because those interests simply do not attach until, essentially, the judge makes a ruling based upon the subject documents.

In contrast to the *Zenith* view of the common law is the recent decision in *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165 (6th Cir.1983), vacating the district court's order sealing all documents filed by the Federal Trade Commission in an injunctive action brought by the tobacco company to prevent proposed agency action. In *Brown & Williamson,* the Sixth Circuit found a "strong common law presumption in favor of public access to court proceedings and records." *Id.* at 1179. The court relied primarily on *Richmond Newspapers, supra,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and explained that the policy considerations supporting a public right of access to criminal trials apply as well to civil trials and pretrial proceedings. Thus, the Sixth Circuit decided that a common law public access right attaches, presumptively, to all documents filed for the court's consideration in a civil case such that the district judge must take such access interest into account in determining the propriety of closure. Unlike *Zenith,* in *Brown & Williamson,* the court apparently decided that documents need not have been the subject of a judicial decision for the presumptive access right to attach.

Since the motions for summary judgment in MDL–150 have not yet been decided, the significance of the difference between

*Brown & Williamson* and *Zenith* is that under the former view of the common law, the presumptive public access right has already attached to the documents at issue here, while under the latter view it has not. Both decisions state that even after the access right has attached, countervailing interests may outweigh the presumption of access. *Brown & Williamson, supra,* 710 F.2d at 1179–80; *Zenith, supra,* 529 F.Supp. at 901–05. *See also Tavoulareas, supra,* 724 F.2d at 1017–1023.

I am troubled by the *Zenith* classification of materials to which the common law access right attaches. If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision, *see Zenith,* 529 F.Supp. at 897–901; *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 n. 7 (7th Cir.1980), documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision. Further, in determining which items are presumptively open, there seems to be no real justification for drawing a line between documents submitted to the court in connection with a motion *before* the judge decides the motion and the same documents *after* the decision. While it might be argued that the judge's familiarity with the content serves to screen scandalous, irrelevant or sensitive commercial information, the issue is at what point the presumptive access right attaches—not whether countervailing interests will overcome the presumptive right, and certainly not whether the information will be relevant at trial.

Indeed, for the presumptive right to be suspended or nonexistent until after the judge has ruled on a motion, would be to impair the important interest in contemporaneous review by the public of judicial performance. *See Richmond Newspapers, supra,* 448 U.S. at 592, 100 S.Ct. at 2835 (Brennan, J., concurring).

## IV. APPLICATION OF THE COMMON LAW

Based on the principles discussed above, I find that a strong common law presumption of access has attached to all of the documents at issue.[9] The next step is to consider whether countervailing interests, such as the interest in maintaining the confidentiality of trade secrets and other sensitive commercial information of use to competitors, outweigh the access right as to any of the documents. The defendants, relying upon *Zenith, supra,* 529 F.Supp. at 875, 894, would have this court place on the movants the burden of showing that confidentiality interests do not overcome access interests. This I decline to do.

First, Dow Jones, an intervenor, can hardly be said to have "ratified" P.T.O. No. 2 or "waived" its right to seek declassification *en masse* by failing to bring contemporaneous motions to declassify, as Judge Becker found was true of the plaintiffs in *Zenith. See id.* Second, the argument that the defendants' reliance on P.T.O. No. 2 during years of discovery shields them now from the burden of justifying protection of the documents ignores the fact that civil litigants have a legal obligation to produce all information "which is relevant

9. These presumptively open documents include the plaintiffs' pretrial briefs (and documents and exhibits cited therein) as well as the summary judgment materials. It should be noted that these pretrial briefs have been submitted, in part, for the court's consideration in ruling on the summary judgment motions. Plaintiffs' memoranda opposing summary judgment refer to information in, indeed to whole chapters of, their pretrial briefs. And, in the *State* cases, this court's "Order Amending Pretrial Order No. 6 And Providing for Form of Initial Pretrial Briefs," dated Dec. 2, 1982, contemplated that at least some of the defendants' motions for summary judgment would be targeted at the allegations in the pretrial briefs. The public access right also has attached to Florida's Supplement to the plaintiffs' Initial Pretrial Brief (in the *State* cases) and all documents cited therein. Similarly, the plaintiffs' "Common Issues Brief" in the *Long Beach* case (including all cited materials) is presumptively open. And, of course, the memoranda exhibits and cited documents connected with the few motions for judgment on the pleadings are included in the presumptively open category.

to the subject matter involved in the pending action," Fed.R.Civ.P. 26(b)(1), subject to exceptions not involved here. Thus, defendants cannot be heard to complain that their reliance on the protective order was the primary cause of their cooperation during years of discovery: even without P.T.O. No. 2, I would eventually have ordered that each discoverable item be turned over to the plaintiffs. Umbrella protective orders do serve to facilitate discovery in complex cases. However, umbrella protection should not substantively expand the protection provided by Rule 26(c)(7) or countenanced by the common law of access. To reverse the burden in this situation would be to impose a significant and perhaps overpowering impairment on the public access right. Finally, in light of the considerable passage of time since P.T.O. No. 2 was issued and the absence in the record of any indication that the defendants carried the burden of showing that a substantial and specific harm to their competitive positions would result if the documents were disclosed, I do not believe it unfair to require the defendants to show at this juncture that some (if any) of the documents here at issue are currently worthy of protection.

■ Accordingly, the defendants are invited to suggest to the court, not later than ten days hence, a time period within which they shall submit any of the subject documents (described in footnote 9) that they believe truly to be worthy of continued protection. Defendants shall serve that paper upon the movants herein, and the latter may propose, if they wish, a different time period. When submitting the documents, defendants may also submit memoranda explaining why categories of information ought to remain sealed and identifying which documents fall into each category. The defendants shall serve any such memoranda upon the *State* and *Long Beach*

plaintiffs' liaison counsel.[10] The plaintiffs shall have the opportunity to oppose, by written brief, the defendants' designations. I wish to make clear my intention to withhold from the public only that information that remains a trade secret or is actually commercially sensitive such that its disclosure would cause more harm to defendants' competitive positions than its nondisclosure would to the public's access interests.

In Section III C., above, I explained that the danger of prejudicial pretrial publicity is weak at present. No trial date has been set, and the resolution of the various motions for summary judgment and other pretrial matters will occupy several additional months. It should also be noted that defendants' privacy interests in the documents do not rise to the level found in *Tavoulareas, supra* 724 F.2d at 1021–1022, since the materials here at issue will play a part in adjudication. I further admonish the defendants that their conclusory statements regarding commercial sensitivity made thus far in connection with the instant motions to declassify will not suffice to establish that there is a significant and specific need for continued protection.

## V.  PROTECTION FOR THIRD PARTIES

■ Getty Oil Company, once a defendant in the *State* cases, urges the court to make provision for the privacy and property interests in trade secrets and commercially sensitive information of third parties, such as itself. Getty asserts that it and other third parties have produced many documents to both the *State* and *Long Beach* parties and that some of these materials, now filed under seal, are among the papers that Dow Jones seeks to declassify. The fact that some of the documents submitted in connection with the motions for summary judgment are papers produced from third parties does not take those documents

---

**10.** The *Long Beach* plaintiffs, who support declassification, have access to the *Long Beach* files and are currently subject to the protective order. Dow Jones is not in this position, and to disclose the contested documents to Dow Jones

for purposes of participating in this final determination would compromise any legitimate trade secrets contained in the files. *See In re Iowa Freedom of Information Council, supra* note 8, at 662.

out of the category to which the public has a presumptive right of access. On the other hand, third parties have a right to know which of the sealed documents they produced are among those subject to disclosure so that they can argue that the disclosure would cause a specific and serious injury to their commercial interests. The following procedure should accommodate both sides. All parties shall review all documents presumptively subject to declassification submitted by them and deliver to any non-party a copy of any document containing information produced by such nonparty.[11] Such a non-party may then take part in the briefing procedure described in the preceding section by moving to intervene for that limited purpose. Upon intervention, a third party seeking to retain the confidentiality of documents shall agree to pay to the party incurring such costs a reasonably proportionate share of the expenses entailed in the review, copying and delivery of documents to the third party. When the proposed screening process shall have been completed, the current protective order will be lifted from all requested documents (including those described in footnote 9) other than those shown to merit continued confidentiality.

IT IS SO ORDERED.

---

**11.** If such a document contains sealed information that was *not* produced by the non-party, the party delivering the document shall take reasonable precautions to ensure that no improper disclosure occurs. The delivering party shall indicate the location from which each document was retrieved (for example, "exhibit 5 to defendant's memorandum in opposition to — motion,") so that the third party may identify the document for the court. The delivering party shall also send a copy of this decision to the third party.