In re ADOBE SYSTEMS, INC. SECURITIES LITIGATION

This Document Relates To ALL ACTIONS.

Master File No. C–90–2453–SBA.

United States District Court, N.D. California.

Jan. 15, 1992.

See also 139 F.R.D. 150.

William S. Lerach, Alan Schulman, Thomas D. Mauriello of Milberg Weiss Bershad Specthrie and Lerach, San Diego, Cal., and Paul F. Bennett, Reed D. Kathrein, and George S. Trevor, of David B. Gold, San Francisco, Cal., for plaintiffs.

Jeffrey S. Facter, Koji E. Felton, Michelle Bryan Oroschakoff, Maria E. Rodriguez, and Patrick D. Robbins, of Shearman & Sterling, San Francisco, Cal., for defendants.

## ORDER MODIFYING PROTECTIVE ORDER

F. STEELE LANGFORD, Chief United States Magistrate Judge.

Plaintiffs' Motion to Modify the Protective Order was referred to the undersigned Magistrate Judge by the District Court (Hon. Saundra Brown Armstrong) and set for hearing December 19, 1991 and continued on the court's own motion. The matter was submitted on the papers, pursuant to Local Rule 220–1.

The moving and opposing papers and the record in this case having been read and considered, and good cause appearing,

IT IS HEREBY ORDERED that the motion is GRANTED, in part and DENIED, in part:

1) Documents produced during the discovery process but not filed as part of a judicial proceeding ("raw discovery") shall remain confidential under the Protective Order filed June 10, 1991;

2) Press releases and published articles produced during discovery and designated as Confidential shall be undesignated;

3) The pre-trial statement and trial exhibits which refer to or incorporate confidential documents or information shall be filed under seal, unless the confidential designation is removed by the court;

4) The party seeking to un-designate a document as confidential which is referred to in the pre-trial statement, or offered in good faith in evidence at trial, whether or not it is admitted, shall have the burden of justifying removing the designation of confidential.

### RATIONALE

■ The public has a presumed right of access to judicial proceedings and documents received by the court as part of the judicial decision-making process.

■ The presumption of access is weakest regarding documents produced by a party or witness but not filed with the court.

The presumption of access is stronger regarding documents filed with the court.

The presumption of access is stronger yet regarding documents upon which the court relies in making a dispositive ruling.

The presumption of access is strongest regarding documents offered in evidence at trial, even if the documents are not admitted.

■ The presumption of public right of access is rebuttable upon showing a compelling need to keep certain information confidential.

■ The party seeking a protective order has the burden of showing good cause for the order.

■ Good cause may be that the protected information includes proprietary and technical information, financial information and business strategy or marketing information which, if revealed to a competitor, would put a company at a competitive disadvantage.

■ The balancing of the public's right of access against a party or witness's compelling need to keep certain information confidential will depend on the circumstances of the case.

Some factors to be considered are:

a) length of time any protective order or sealing order has been in effect;

b) whether the party seeking the information stipulated to the protective order or sealing order;

c) whether the information has become public knowledge, or has been shared with competitors voluntarily;

d) whether the public interest would be served by maintaining or removing the protective order or sealing order, in whole or in part.

## LIMITS OF THIS MOTION

Plaintiffs initially moved for removal of the protective order from all documents and information produced in the discovery phase of this case, including documents and information produced but not filed, so-called "raw discovery." Plaintiffs in subsequent pleadings and their proposed order have narrowed their motion to request declassification only of documents and information introduced as evidence at trial. Plaintiffs put the burden of proof on defendants to justify keeping a document confidential at trial.

Plaintiffs claim that defendants have waived their right to keep *any* documents confidential by their abuse of the "confidential" designation: defendants allegedly designated press releases and published news articles as confidential. Defendants claim this was inadvertent and concede that such documents should not be kept confidential.

Accordingly, the Court will presume that plaintiffs' motion has been narrowed to request un-designation only of documents and information offered as evidence at trial, and that defendants will agree to un-designate press releases and published news articles which were previously designated as confidential.

## TERMS OF PROTECTIVE ORDER/SEALING ORDER

The parties voluntarily agreed to entry of a Stipulated Protective Order. It was signed by the Hon. Samuel Conti and filed June 10, 1991.[1] The reasons the parties agreed to the Protective Order, as stated in the preamble to the order itself, were:

1) that the parties believed that discovery would involve production of many documents which might contain proprietary, technological, business, personal and financial information, which the parties might contend should be protected from discovery.

2) The parties also believed it to be in all of their best interests that the documents, information and other materials not be available to the public, to business competitors of Adobe Systems, Inc. or to business competitors of Adobe's customers.

3) The parties wished to establish procedures which would be fair to the parties

---

1. By Order of the Hon. Thelton E. Henderson, Chief Judge, this case was reassigned on July 26, 1991 to the Hon. Saundra Brown Armstrong, District Court Judge.

and to non-party witnesses, expedite the discovery process, limit the necessity for objections or subsequent motions to limit discovery, and facilitate the disposition by the Court of disputes or problems arising in connection with discovery.

The stipulated procedure allows a producing party or witness to designate material as confidential, in the reasonable exercise of the party's sole discretion. No party waived the right to challenge such a designation. Confidential information was defined as any proprietary business or financial information, including but not limited to trade secrets.

Confidential documents produced in discovery are to be used for this litigation only, and any subsequent appeal.

Information specifically setting forth royalties received or to be received by Adobe from identified customers is specifically protected, except that such information may be shown to the customer or vendor to whom it pertains.

Also protected is non-public information specifically setting forth the personal financial information of the individual defendants, including but not limited to information regarding trades in Adobe stock.

The Protective Order provided that when any confidential document is included with or disclosed in any documents filed with the Court, that the document be filed under seal.

A procedure was also outlined for objections to the confidential designation. These objections are to be filed no later than sixty days before the date first set for the Pretrial Conference.[2]

The parties are to attempt to resolve such challenges informally. Should informal attempts fail, the parties are to resolve the dispute under the supervision of the Court pursuant to Rule 230-4 of the Local Rules of Practice for the Northern District. (Meet and Confer). Disputed documents remain confidential unless and until the Court rules otherwise.

2. (The Pretrial Conference in this case is February 6, 1992. The deadline for challenging a confidential designation is therefore December 6, 1991. The Motion to Modify the Protective

Parties to the Protective Order do not waive evidentiary objections.

*Confidential information may be used at trial. Such use is subject to the Stipulation and Order and parties shall take all steps reasonably necessary to protect the confidentiality of such materials during such use.* (emphasis added.)

## MEET AND CONFER RE MODIFICATION OF PROTECTIVE ORDER

According to Paul F. Bennett, Esq., counsel for plaintiffs, at the time the attorneys were negotiating the terms of the protective order in April and May, 1991, he notified defendants' counsel that plaintiffs planned to move to modify the protective order for the purpose of trial, once discovery was complete. He reiterated that intention at a status conference September 20, 1991, before the District Court.

He says that at the November 21, 1991 meeting with defendants' counsel, they accused him of violating local rules of court by moving to modify the protective order. In view of the attorneys' difference of opinion on this question, he thought there was no point in their meeting further. That is when he suggested defendants' counsel leave his office.

## ISSUES

### THERE ARE TWO MAJOR ISSUES:

1) Is there a public right of access to confidential documents used in litigation? Is there a right under the First Amendment to the U.S. Constitution? Under common law? In a civil trial? Does a right of access apply to all documents produced, those incorporated into pleadings or those offered in evidence at trial? May a presumption of a right of access be overcome, and if so, how? What factors would be considered? Who has the burden of proof? Are the rights of third parties different? Why or why not?

Order was filed October 21, 1991, noticed for hearing before the District Court on November 26, 1991, referred to the Magistrate Judge and set for hearing December 19, 1991.)

2) Is there a compelling need to keep certain information which is relevant to the issues in this case confidential? This question includes subissues such as—are only technological trade secrets covered, or are business secrets and financial information as well? Is the confidential information produced in this case in 1989 and 1990 still sensitive or is it so stale that it is no longer sensitive? What harm did the protective order foresee? What harm do opponents to the motion to modify describe?

### THERE ARE TWO MINOR ISSUES:

3) Have plaintiffs waived the right to a wholesale declassification of confidential documents by their agreement to the terms of the Protective Order and by their benefiting from the ease of discovery. Have defendants waived their right to enforce the Protective Order by their abuse of discretion in designating documents as confidential?

4) If the Protective Order remains in place, in whole or in part, what will be its effect on trial preparation and trial? Will it require, in effect, a closed courtroom?

IS THERE A PUBLIC RIGHT OF ACCESS TO ALL DOCUMENTS PRODUCED IN DISCOVERY? TO DOCUMENTS FILED? TO DOCUMENTS RELIED UPON BY THE JUDGE IN REACHING A DECISION? TO DOCUMENTS OFFERED AS EVIDENCE AT TRIAL?

### FIRST AMENDMENT

A public right of access to judicial documents and proceedings exists under the First Amendment to the U.S. Constitution, but only in *criminal* proceedings. *Associated Press v. U.S. Dist. Ct. for C.D. Calif.* 705 F.2d 1143 (9th Cir.1983)

### COMMON LAW

There is a common law public right of access, but courts disagree on its strength and scope.

Some courts in some cases hold that there is a strong common law presumption in favor of public access to court proceedings and records. *Brown & Williamson Tobacco Corp. v. F.T.C.* 710 F.2d 1165, 1179 (6th Cir.1983) This case involved the public's right to know the relative tar content of different brands of cigarettes, information which had been shared by competing cigarette companies.

Where there has been abuse of a protective order, in a case where the protective order was ten years old and the issue one of international importance, the court may have to balance the right to public access against a need for confidentiality, finding, for example that only material containing trade secrets or which was actually commercially sensitive should remain subject to protection. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation* 101 F.R.D. 34, 41 (C.D.Cal.1984)

### RIGHT OF ACCESS FOR DISCOVERY DOCUMENTS

Whatever right of access attaches to discovery documents is weak, and based only on the Federal Rules, not even the common law. *Tavoulareas v. The Washington Post,* 724 F.2d 1010, 1016 (D.C.Cir. 1984)

Federal rules require deposition transcripts to be filed but the Court may *on its own motion* dispense with the requirement. [FRCP 5(d)] Many district courts have adopted local rules making such dispensation standard except where the depositions are needed in connection with motion proceedings, and excluding public access even where filing occurs. *In re Reporters Committee for Freedom of the Press* 773 F.2d 1325, 1338 (D.C.Cir.1985) In fact, the Northern District of California has just such a dispensation in Local Rule 229–1 which states that discovery documents shall not be filed, without the order of the court.

### WHEN DOES RIGHT OF ACCESS ATTACH?

There is a split of opinion on the issue of when the right of public access attaches.

The Sixth Circuit has held that a public right of access attaches when a document is filed. A very comprehensive ruling by the District Court for the Eastern District

of Pennsylvania has held that the right of access attaches only to documents used by the judge in reaching a decision. *Brown & Williamson Tobacco Corp. v. F.T.C.* 710 F.2d 1165 (6th Cir.1983) and *Zenith Radio Corporation v. Matshushita Electric Industrial Co., Ltd.* 529 F.Supp. 866 (E.D.Pa. 1981)

Both the *Brown & Williamson* and the *Zenith* decisions state that even after the access right has attached, countervailing interests may outweigh the presumption of access. *Brown & Williamson* 710 F.2d at 1179–80, *Zenith* 529 F.Supp. at 901–905.

A court in the Ninth Circuit held there was a strong presumption in favor of public access to judicial documents and that confidential documents on which the court relied in making a dispositive ruling should be accessible. *In re Coordinated Pretrial Proceedings in Petroleum Product Antitrust Litigation* 101 F.R.D. 34, 44 (C.D.Cal.1984)

That case involved inquiry into a price-fixing scheme among the international oil cartel leading to artificial shortages and inflated prices for petroleum products worldwide. The protective order had been in effect for ten years, most of the filings had *not* been under seal and the *Wall Street Journal,* not one of the parties, was seeking the information. The Court in *In re Petroleum* held that the test was a balancing of the public's interest in knowing the confidential information and the holder's interest in privacy and the potential competitive disadvantage cause by revelation. *Id.* The court found that the information was stale and no longer of competitive value and that the public interest in public access to judicial proceedings was strong in this issue of international significance.

## DOCUMENTS TO BE INTRODUCED AT TRIAL

Plaintiffs are seeking un-designation of documents to be used at trial. A method has been offered for determining whether documents referred to at a hearing become part of the record.

The court in *Zenith* held that the nature of the reference may support the case for nondisclosure of sealed record material if the reference is extremely general or non-informational and if countervailing interests are shown.

General references to material alleged to contain sensitive commercial information are more likely to support continued protection, for example, than detailed references would be. If a significant amount of the allegedly sensitive data is already in the public domain, because included in the publicly filed transcript of a proceeding, then release of the documentary material containing such data will cause relatively little further injury.

If, on the other hand, almost none of the data has been made public, releasing the documentary material could inflict serious competitive injury. *Zenith* 529 F.Supp. at 900.

■■■ If the plaintiffs in the ADOBE case were to refer to confidential documents or information solely for the purpose of dragging them into the record, then the court would not order their contents disclosed. If, however, the confidential documents or information were referred to extensively as a genuine part of the case, then the court could order them to be disclosed in the public record.

The idea is to prevent a party from attempting to enter confidential documents into the record, not because they are relevant to their case, but because they are damaging to their opponent's business.

## IS THERE A COMPELLING NEED TO KEEP CERTAIN INFORMATION CONFIDENTIAL?

"Courts have refused to permit their files to serve ... as sources of business information that might harm a litigant's competitive standing." *In re Reporters' Committee* 773 F.2d 1325, 1333.

Protective orders and filings under seal are the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that

confidential business information, proprietary technology and trade secrets will not be publicly disseminated. *See, e.g. Johnson Controls, Inc. v. Phoenix Control Systems,* 886 F.2d 1173, 1176 (9th Cir.1989); *Henry Hope X–Ray Products Inc. v. Marron Carrel, Inc.* 674 F.2d 1336, 1343 (9th Cir.1982)

## BURDEN OF PROOF

The party seeking a protective order bears the burden of showing good cause for the order to issue. Fed.R.Civ.Proc. Rule 26, 28 U.S.C.A.

ADOBE and third-party witnesses testify that the confidential information produced in this case is still sensitive, although some of it was created eighteen months ago. They further testify that they would not have produced this information voluntarily without the protective order and that they will suffer competitive disadvantage if this information is released to the public or to their competitors. Here are some examples:

*Colleen M. Pouliot, Adobe General Counsel and Secretary:* confidential documents include highly sensitive information about different royalty rates paid to Adobe by its various original equipment manufacturers (OEM) customers. Many of these royalty rates set forth in these documents are still in effect today, and their disclosure would seriously compromise Adobe's ability to negotiate individual royalty rate agreements with its various OEM customers.

Adobe's confidential documents also include engineering information and trade secrets regarding products being developed by Adobe and its OEM customers, as well as future product plans of OEM customers of Adobe. Disclosure of such information would give Adobe's competitors and Adobe's customers' competitors valuable technical information about product specifications, and would place Adobe and its customers at an unfair competitive disadvantage.

In addition, Adobe is required to maintain the confidentiality of such information pursuant to confidentiality agreements it has entered into with its OEM customers.

Many of the documents produced to plaintiffs contain sensitive information regarding Adobe's business and marketing strategy which, if made public, will educate Adobe's competitors as to how Adobe conducts its business and what its future plans are. Many of these documents are forward-looking and therefore remain sensitive even though they were created one or two years ago.

Information about the Application Products Division—would educate competitors regarding Adobe's marketing success or the lack.

OEM (Original Equipment Manufacturers) Revenues—would adversely impact Adobe's negotiating leverage in areas of royalty rates, product development and strategic alliances.

*Vincent J. Cole, Lexmark (division of IBM)*—testifies that confidential documents include IBM's planned and actual purchases and licenses of Adobe's products and technology (Decl.Ex. A)

*Kenneth Kaulbach, NEC Corp.*—confidential documents include technology licensing contracts, information about new product development, technical information about NEC products, royalties paid by NEC to Adobe for use of PostScript technology, information reflecting strategic business relationship between NEC and Adobe, information about NEC's evaluation of its competitors' products *vis a vis* NEC products and information about NEC product problems and performance.

"Public disclosure of this confidential information will cause NEC irreparable harm, because NEC's competitors will learn sensitive, technical information about NEC's products, information about NEC's evaluation of competitors' products and information about NEC's strategic business relationship with Adobe."

*Declaration of William J. Branson, Lexmark*—Documents contain confidential and sensitive information including information about royalties paid by Lexmark to Adobe for use of Adobe's PostScript technology in Lexmark printer products, also Lexmark printer product strategy, position-

ing against Lexmark's competitors' products, confidential technology licensing agreements governing the relationship between Adobe and Lexmark.

If this information were made public, Lexmark would be harmed. Lexmark's competitors would learn sensitive business information about Lexmark's business and its strategic relationship with vendors like Adobe. This information is still sensitive today.

*Declaration of Dorothy Wright, IBM Manager*—The discovery produced includes information about royalties IBM pays Adobe for font technology, confidential technology licensing contracts between IBM and Adobe, information regarding IBM future business strategy with Adobe, IBM's evaluation of its competitors' strategy.

If this confidential information were made public, IBM's competitive position would be compromised. This information is still confidential and sensitive, even though created in 1991.

*Declaration of Denise Band, counsel for Hewlett–Packard*—H–P would not have voluntarily produced confidential H–P documents.

These documents contain information about the software source code, the royalties H–P pays Adobe for PostScript, internal H–P sales forecasts, information regarding development of new unreleased H–P products and product features, highly confidential technology licensing contracts between H–P and Adobe, information regarding printer design and systems design, information about testing of H–P products and other information H–P is required to keep confidential by agreement with other companies.

If the information in confidential documents were made public, H–P's competitive position would be severely compromised. H–P's competitors would learn sensitive technical information about H–P products and also confidential information about how H–P conducts business, its strategic relationships with vendors like Adobe, and future business strategy.

This information is still current, even though created in 1990. The confidential documents also contain identities of key H–P personnel; H–P's policy is to maintain the confidentiality of non-officer employees.

## BALANCING

■ Information is less likely to remain designated confidential where a protective order has been in effect for a long time, e.g. ten years. *In re Petroleum* 101 F.R.D. at 37.

Information is also less likely to remain confidential if the person seeking the information did not agree to the original protective order. *Id.* (*Wall Street Journal* was not a party to the protective order.)

Information is less likely to remain confidential where it has already been shared with competitors *Brown & Williamson Tobacco Corp. v. F.T.C.* 710 F.2d at 1180.

Information is less likely to remain confidential where the public interest in access outweighs the harm to parties or witnesses of disclosure. *In re Petroleum* 101 F.R.D. at 44.

Information is more likely to remain confidential if the party seeking the information voluntarily entered into the protective order in order to facilitate discovery. *Zenith v. Matsushita* 529 F.Supp. at 875.

## ANALYSIS

Plaintiffs and defendant negotiated a protective order which was ratified by the court in June, 1991. During the course of discovery in this case, defendants and third parties have produced confidential documents containing information about proprietary and technical information, as well as their business strategy, analysis of their competitors and relationships with other companies. This information, created within the past two years, is still sensitive and disclosure would put defendants and third-parties at a competitive disadvantage.

## PLAINTIFF WAIVER

■ In certain instances, a party who voluntarily agrees to the terms of a protec-

tive order waives its right to wholesale declassification of confidential documents. *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Inc.* 529 F.Supp. 866 at 894 (E.D.Pa.1981). In that case parties had negotiated a protective order to facilitate discovery. The protective order continued in force for close to ten years. Parties and non-parties produced millions of documents marked "confidential" in reliance on the protective order. Plaintiffs never availed themselves of the procedures for challenging the designation of *any* documents.

The court did, however, find that some categories of documents merited declassification. The court found that materials which were the subject of an evidentiary ruling became part of the record for purposes of the public's right to inspect and copy. *Id.* at 899. The court also found, however, that material should be disclosed only if disclosure carried little risk of competitive injury, e.g. if the information was stale. *Id.* at 906.

### DEFENDANT WAIVER

Plaintiffs argue that defendants have waived their rights under the Protective Order by abuse of discretion in designating certain published documents as confidential. A problem does arise when it appears that the parties have abused their authority to designate documents "Confidential," and some of the sealed information should not legitimately remain closed to the public. *In re Petroleum* 101 F.R.D. at 41. Defendants admit that they have "inadvertently" designated press releases and published news articles as "Confidential." They offer voluntarily to undesignate these documents.

### EFFECT ON TRIAL PREPARATION AND TRIAL

■ When the parties negotiated the protective order, they anticipated that it would remain in effect at trial and required the parties to take all steps necessary to protect confidential material at trial. (Protective Order ¶ 18.) The court retains the right to close some or all of the proceedings, limiting the public's right of access, as long as it articulates the countervailing interest it seeks to protect.

If the District Court chooses to close the trial proceedings in this case, in order to protect confidential material which may be offered in evidence, it must make certain determinations. A trial court, in closing a proceeding must articulate the countervailing interest it seeks to protect and make findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Publicker Industries Inc. v. David Cohen* 733 F.2d 1059, 1071 (3rd Cir.1984)

The *Publicker* case is only marginally applicable here—there was no protective order in the case and the press, not a party, was seeking access to the confidential information. The analysis followed is basically the same as that for public right of access to judicial proceedings as laid out in *Zenith, Brown & Williamson* and *In re Petroleum.*

### CONCLUSION

■ The protective order has been in existence a short time. The entity seeking disclosure is a party to the action, who also voluntarily agreed to the protective order. The information has not become public knowledge, nor has it been shared voluntarily among competitors.

Plaintiffs have failed to show that the protective order is invalid and therefore, the defendants have met their burden of proof to show good cause for the order to remain in effect.

■ The public interest would be served in making a part of the record those documents offered in evidence at trial, as long as the damage done by such disclosure does not outweigh the public interest in free access to judicial proceedings.

### PROCEDURE FOR CHALLENGING CONFIDENTIAL DESIGNATION

■ Plaintiffs contend that the existing procedure for challenging the confidential designation would create an intolerable burden, both for the parties and for

the court, as pre-trial preparation proceeds. The Protective Order places the burden of proof on the party challenging the confidential designation. Since the parties have stipulated to the Protective Order, they have waived their right to wholesale un-designation of documents (*Zenith v. Matsushita* 529 F.Supp. 866, 894 (E.D.Pa.1981).

All parties and the non-party witnesses have relied on the Protective Order and wholesale declassification would undermine their justified expectations. The Protective Order has a procedure for objecting to the confidential designation and plaintiffs have failed to demonstrate that now, suddenly, that procedure is too burdensome to be followed.

The court has found no adequate reason in either the facts of this case or the applicable case law to abandon the Protective Order which the parties negotiated and relied on throughout this case. The parties may un-designate documents to be offered at trial. However, they must follow the agreed-on procedures in doing so.

### SUMMARY

■ There is at best a weak presumption of public right of access to information produced by parties or witnesses but not filed with the court, so-called "raw discovery." Such information which has been designated confidential shall remain so.

Defendants have agreed to un-designate press releases and published news articles previously designated as confidential, and this shall be done.

■ There is a strong presumption of public right of access to information and documents introduced in evidence at trial. This presumption may be overcome by showing a compelling interest in maintaining the confidentiality of documents.

Under the terms of the Protective Order, the party challenging the confidential designation has the burden of proof to show why it should be removed.

Parties shall follow the procedure outlined in the Protective Order at ¶ 13(a) and (b), in un-designating confidential documents referred to or incorporated in the pre-trial statement or offered in evidence at trial.