The **UNITED STATES of America,**
**Plaintiff,**

v.

**GENERAL MOTORS CORPORATION,**
**Defendant.**

**Civ. A. No. 83–2220.**

United States District Court,
District of Columbia.

Oct. 19, 1983.

---

See also, D.C., 574 F.Supp. 1047.

Lawrence A.G. Moloney, Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff.

Thomas A. Gottschalk, Kirkland & Ellis, Washington, D.C., for defendant.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

This is an action by the United States against General Motors Corporation ("GM") under the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 *et seq.,* for declaratory and injunctive relief in the form of an order for, *inter alia,* the recall and repair of GM 1980 model X-cars. The complaint charges violations of the Act by GM between January, 1979, and August, 1980, based upon GM's alleged knowledge

of and failure to reveal or to remedy a safety-related defect in the braking mechanism of approximately 1.1 million of the vehicles manufactured during the period.

The suit originates in information—most of it provided by GM itself—developed by the National Highway Traffic Safety Administration ("NHTSA") in the course of its administrative investigation of reports of incidents of "premature rear wheel lock-up and loss of vehicle control" on the cars. Utilizing that information to support it, the government has filed a motion for summary judgment. The motion was filed initially under seal, in anticipation of GM's claim of confidentiality for the supporting documentation it had provided NHTSA, but was accompanied by the government's own motion to unseal. Before the Court at present, therefore, are the government's motion to unseal the record, which GM has opposed as expected, and GM's motion for leave to take limited discovery in accordance with Fed.R.Civ.P. 56(f) before being required to respond to the summary judgment motion.

As requested by the Court at the initial pretrial/scheduling conference GM has examined the material under seal to identify with particularity that for which it can offer legitimate grounds to preserve the seal. It now limits its opposition to the motion to unseal—and that only for the 30 days it asks to be allowed to file its opposition to summary judgment—to the government's memorandum itself and supporting exhibits 6 and 7 which it describes as a "partial selection of confidential internal GM documents" and "uncompleted administrative depositions of GM employees," respectively. It does not contend that the documents are privileged in any conventional sense; rather, it says, their disclosure now, before GM has had an opportunity to place of record evidence which would contradict or explain what it believes to be the misleading inferences which will be drawn from them, will generate adverse publicity and do harm to its reputation which such attention as its response may attract later on will be unlikely to undo.

■ GM asserts that the authority for sealing the documents is found in the Court's power under Fed.R.Civ.P. 26(c) to protect a party from annoyance or embarrassment. But litigation is, as a rule, supposed to be conducted in full view, and the greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Whether or not, as the government insists, the matter can truly be said to involve public safety, GM does not dispute that it is a case of some public significance and has, in fact, already received considerable publicity.

■ In an analogous context in *In Re Halkin,* 598 F.2d 176 (D.C.Cir.1979), the Court of Appeals prescribed the test to be applied in order to justify keeping information which is a part of pending litigation from public scrutiny. Adapting the test to present circumstances, the harm unsealing the record will cause GM must be substantial and serious; any sealing order must be narrowly drawn and precise; and there must be no alternative means of protecting GM's interest in jeopardy which intrudes less directly on the constitutionally protected interests served by conducting judicial proceedings in public. All three elements of the test must be met, and the Court must make necessary findings on each element before the "good cause" required by Fed.R.Civ.P. 26(c) for a sealing order may be found to exist. *See Id.,* at 191–92. *Cf. United States v. Exxon Corporation,* 94 F.R.D. 250 (D.D.C.1981).

■ In the circumstances, the Court is unable to find that such transient embarrassment as GM will experience when the government's motion for summary judgment and supporting documents are unsealed constitutes the "substantial and serious harm" the *Halkin* test contemplates as essential to justify concealing what would otherwise be in the public domain altogether. The orders sealing parts of the record will be vacated except as provided below.

GM has identified five documents[1] for which it asserts a "trade secrets" privilege of the "future product plan," "warranty cost analysis" and "proprietary test" varieties. It is difficult to perceive how a trade competitor could secure any significant advantage from what appears to be the innocuous contents of any of them, but it may be that skilled analysts of business intelligence could learn more from them than they seem to reveal in themselves, and their contribution to a public understanding of the issues in the case would be minimal and cumulative. Therefore, those documents (except No. 01973 once redacted) may remain under seal for the time being, although the parties may refer to them to the extent reasonably necessary in the presentation of the case.

■ GM has also moved for leave to conduct limited discovery pursuant to Fed.R. Civ.P. 56(f) prior to responding to the government's summary judgment motion. Specifically, GM has requested the production of certain documents and given notice to take the depositions of two NHTSA officials by name, Gary Woodford and Robert F. Hellmuth, whose declarations are offered in support of the government's motion.[2] GM cites *Committee for Nuclear Responsibility v. Seaborg,* 463 F.2d 783 (D.C.Cir. 1971), among other cases, for the proposition that summary judgment may not be granted when the opponent has had no opportunity to demonstrate, by discovery if necessary, the existence of material issues of fact in advance of hearing. Counsel's affidavit asserts that Woodford and Hellmuth must be deposed to elicit information concerning NHTSA's practices in conducting and its conclusions resulting from the investigation of the phenomenon of "rear wheel lock-up" on both GM cars and those of other manufacturers. The government represents, however, that its motion for summary judgment is grounded entirely in the information NHTSA derived from GM; that what NHTSA may or may not have learned—and how it learned it—with respect to "rear wheel lock-up" on any car under any circumstances is, at this stage at least, immaterial, since it is GM's own knowledge, as evidenced by the documents in its files and the testimony of its employees, which proves the intentional violations of the Act charged; and that, if GM disagrees the evidence so shows, it has only to say so, by contradicting affidavits of its own personnel, to carry its burden of demonstrating the existence of material issues of fact which would preclude summary judgment against it. *See United States, v. General Motors Corporation* ("Wheels"), 518 F.2d 420, 440–42 (D.C.Cir.1975).

Assuming the government's case is, as it is represented to be, the Court agrees that depositions of NHTSA employees might be helpful but are certainly not indispensable to GM's response to the summary judgment motion. It concludes, therefore, that, considering that public safety *may* be in jeopardy, and that expeditious disposition of the case may be indicated (notwithstanding the government has not moved for preliminary injunction), GM's motion to defer filing its opposition to the government's motion for summary judgment until it has completed the depositions it seeks will be denied.[3]

For the foregoing reasons, therefore, it is, this 19th day of October, 1983,

1. Documents Nos. 01973; 105316–19; 905172–76; 104455–59 (a/k/a 108391–95); and 500276–78. GM proposes a three-line redaction of No. 01973 which will eliminate the confidential information to which the government accedes.

2. The government made timely response to GM's First Interrogatories and Request for Production of Documents which preceded GM's filing of its partial answer to the complaint and has voluntarily provided GM with the "unprivileged" individual X-car owners' incident reports GM has requested in connection with a proposed Rule 30(b)(6) deposition of a third NHTSA employee to be designated by the agency. The issue of document discovery is, therefore, at this point moot.

3. GM may continue to conduct appropriate discovery in the ordinary course of its defense of this action on all available grounds, subject to the provisions of Rules 26–37, Fed.R.Civ.P., but it may not expedite the discovery for the purpose of responding to the motion for summary judgment.

**614**

ORDERED, that the motion of plaintiff United States to unseal portions of the record is granted, except as otherwise provided herein, and the motion of defendant General Motors to complete Rule 56(f) discovery before responding to plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant shall file and serve its opposition to plaintiff's motion for summary judgment on or before November 20, 1983, and plaintiff United States shall file its reply, if any, on or before December 15, 1983; and it is FURTHER ORDERED, that oral argument on plaintiff's motion for summary judgment is scheduled for January 11, 1984, at 10:00 a.m.