### In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

#### MDL No. 381.

United States District Court,
E.D. New York.

Feb. 13, 1985.

Stephen J. Schlegel, Schlegel & Trafelet, Ltd., Chicago, Ill.; Benton Musslewhite, Law Offices of Benton Musslewhite, Inc., Houston, Tex.; Thomas W. Henderson, Henderson & Goldberg, Pittsburgh, Pa.; Phillip E. Brown, Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal.; Stanley Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio; John M. O'Quinn, O'Quinn & Hagans, Houston, Tex.; Neil R. Peterson, Washington, D.C. and Gene Locks, Greitzer & Locks, Philadelphia, Pa.; Newton B. Schwartz, Houston, Tex.; Irving Like, Reilly, Like & Schneider, Babylon, N.Y.; David J. Dean, Dean, Falanga & Rose, Carle Place, N.Y.; Aaron Twerski, Hempstead, N.Y., of counsel; Victor J. Yannacone, Jr., Yannacone & Yannacone, P.C., Patchogue, N.Y., for plaintiffs.

Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y.; Philip Pakula, Townley & Updike, Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, William Krohley, Kelley, Drye & Warren, Thomas Beck, Arthur, Dry & Kalish, Richard Goldstein, Shea & Gould, New York City, of counsel; David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N.J.; Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill.; Henry G. Miller, Clark, Gagliardi & Miller, White Plains, N.Y., for defendants.

Arvin Maskin, Dept. of Justice, Washington, D.C., for third-party defendant United States.

Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, D.C., for amicus curiae Vietnam Veterans of America.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

In an opinion dated December 17, 1984, Magistrate Shira A. Scheindlin ordered the lifting of the protective orders of February 6, 1981 and October 14, 1982 relating to discovery materials produced by the defendant chemical companies. Defendants appealed.

The Magistrate's thoughtful analysis, briefs submitted on the appeal, and full oral argument have been considered. The Magistrate's order is affirmed for the reasons stated in her opinion and by the court on the record. The Magistrate's opinion is consistent with previous opinions of the court. *See In re "Agent Orange" Product Liability Litigation*, M.D.L. No. 381, slip op. at 7–8 (E.D.N.Y. Jan. 7, 1985) (first amendment and other public interest considerations); 597 F.Supp. 740, 769–70 (E.D. N.Y.1984) (discussing veterans' concern with making discovery materials public). The Magistrate's opinion therefore is adopted as the Memorandum and Order of the court.

This order is stayed pending final disposition of appeals from this court's final approval of the *"Agent Orange"* class action settlement. *See* slip op. at 136–37 (E.D. N.Y. Jan. 7, 1985); 597 F.Supp. 740 (E.D.N.Y.1984). The Magistrate's opinion will be published as a Memorandum and Order of this court.

So ordered.

1. There is some question concerning the status of non-representative plaintiff class members. They have been variously described as "passive parties", *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), non-nominal parties, *Katz v. Carte Blanche Corp.*, 53 F.R.D. 539, 541 (W.D.Pa. 1971), *rev'd on other grounds*, 496 F.2d 747 (3d Cir.1974) and "back burner parties" *see generally* Newberg, Newberg on Class Actions § 2830 at

## Magistrate's Pretrial Order No. 33

### December 17, 1984

SHIRA A. SCHEINDLIN, United States Magistrate.

On May 7, 1984 a settlement was reached in the "Agent Orange" litigation. After Rule 23(e) fairness hearings were held throughout the United States, the Court tentatively approved the settlement in an opinion issued on September 25, 1984. During the fairness hearings, the Vietnam Veterans of America ("VVA") made a request on behalf of thousands of veterans who are members of the VVA and of the plaintiff class for public access to much of the discovery material produced by the defendants and the Government over the past five years. That material is now sealed pursuant to various protective orders.

The VVA, as intervenor on the motion, has now moved to lift the protective orders at least with regard to exhibits listed by the parties in their pretrial orders. Victor J. Yannacone, as intervenor on the motion, has also filed a motion to lift the protective orders on behalf of several thousand veterans whom he represents. By his motion Mr. Yannacone seeks to lift the protective orders as to *all* the documents produced during discovery as well as *all* depositions. Finally, the Agent Orange Plaintiffs' Management Committee ("Plaintiffs' Management Committee"), has filed a brief in support of the VVA motion. Thus, both parties and non-parties are now seeking to lift the various protective orders issued during the Agent Orange litigation with regard to all or part of the discovery material.[1]

1259 (1977). The prevailing view appears to be that class members are not parties, at least for such purposes as discovery and liability for sanctions. *See id.* at §§ 2820 and 2830. They are considered parties, however, for purposes of being bound by the judgment in a class action, receiving the benefit of the statutes of limitations toll, and having standing to appeal from decisions and object to settlements. *Id.* at § 2830.

## I. The Protective Orders

### A. *February 6, 1981:* Commercial Information

On February 6, 1981 Judge George C. Pratt, then supervising the "Agent Orange" litigation, issued an order allowing defendants to designate as "confidential" those records which they contended contained "confidential developmental, business, research or commercial information." *See* PTO 27 para. 1. This order required a party who received documents designated as confidential to refrain from disclosing any such document, to file it with the Court under seal if filing was required, and to return it or destroy it at the end of the litigation.

### B. *October 14, 1982:* Blanket Protective Order

In May, 1982 Special Master Sol Schreiber, then supervising discovery in this litigation, orally issued a blanket protective order. This order required that all documents produced by any party and all depositions were to be treated confidentially. In his subsequent memorandum opinion, the Special Master stated that good cause for his order existed because of the

> complexity of this litigation, the emotionalism surrounding the issues, the number of documents yet to be reviewed and the desirability of moving discovery expeditiously in order to meet the June 1983 trial date.

*See* 96 F.R.D. 582, 583 (E.D.N.Y.1983). This order was approved by Judge Pratt. *Id.* at 585. The Special Master later lifted the blanket protective order as to certain documents, and in his opinion he reiterated his reasons for imposing the blanket order.

> The necessity for encouraging cooperation among the parties and the government and the desirability of implementing an efficient and expeditious discovery

program constituted, in my judgment, sufficient cause for the issuance of the blanket protective order in October, 1982. 98 F.R.D. 539, 542 (E.D.N.Y.1983). The ruling also stated that the blanket order was not to supersede the order regarding production of confidential documents.

### C. Protective Orders Regarding Government Records—1980–1983

▊ Over the years of this litigation, the Court issued various protective orders that relate to Government documents. The earliest order, PTO 19 (May 21, 1980), protects from disclosure confidential medical records on file with the Veterans Administration. In issuing this order, the Court found that the public interest in and need for disclosure were outweighed by (1) the potential for injury to the persons who are the subjects of these medical records (2) the treatment services need to maintain the confidentiality of such records, and (3) the requirements of the physician-patient relationship. *Id.* at 1. PTO 42, 96 F.R.D. 578 (E.D.N.Y.1983), issued on January 13, 1983, protects from public disclosure records of the Environmental Protection Agency ("EPA") that are designated by the Government as trade secrets and/or confidential business information. The Court ordered blanket protection for these agency documents because an agency review of each document, for claims of privilege or confidentiality in advance of production, would have created inordinate delay and expense. *Id.* at 579. PTO 47, 97 F.R.D. 424 (E.D.N.Y.1983), protected certain records of an official of the U.S. Department of Agriculture. PTO 48, 97 F.R.D. 427 (E.D.N.Y.1983), established guidelines for the assertion of the deliberative process privilege and the state secrets privilege over Government documents.[2]

---

**2.** Pursuant to this order the Special Master reviewed hundreds of Government documents, many of which were found to be irrelevant. Almost all of the relevant documents were produced by the Government pursuant to the blanket protective order. A handful of documents were found to be protected from disclosure by the state secrets privilege. Because an appeal as to the finding of privilege is now time barred, the status of those documents is no longer subject to review.

## II. Status of the Documents and Depositions Covered by the Protective Orders

### A. Private Defendants

On May 12, 1983 Judge Pratt ruled on summary judgment motions that resulted in the dismissal of four defendants. At that time he recommended that the Special Master consider lifting some portion of the blanket protective order. On June 21, 1983 the Special Master recommended that the court lift the protective order as to all documents that were "submitted with and referred to in the parties' summary judgment papers." 98 F.R.D. 539, 548 (E.D.N.Y.1983).

The Special Master concluded that the court should release these materials from the protective order because the common law public right of access had attached to those documents that were part of the judicial record. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). He further found that documents submitted to and relied on by the Court in reaching a determination as to summary judgment are part of the judicial record. *Zenith Radio Corp. v. Matsushita Electric Industrial Co. Ltd.*, 529 F.Supp. 866 (E.D.Pa.1981); *Cianci v. New Times Publishing Co.*, 88 F.R.D. 562, 565 (S.D.N.Y.1980). After concluding that a presumption of public access exists with regard to these documents, the Special Master then weighed the interests of the defendants in maintaining confidentiality against the presumption in favor of release.

In deciding to release the documents to the public, the Special Master made the following argument.

> The public has an interest in learning more about the nature of the issues raised by this complex litigation involving thousands of veterans and members of their families; the plaintiffs' claim of exposure to dioxin; and the chemical companies defense that the product was harmless, produced in accordance with government specifications during war-

fare. Indeed, apart from the Agent Orange litigation, dioxin has sparked much public interest and debate, as contamination has been discovered in the soil of towns and cities around the country. ... It is this gain in public understanding which heightens the public interest in the summary judgment documents ....

98 F.R.D. at 547. The only argument cited by the Special Master in support of defendants' opposition to the lifting of the order was defendants' fear of prejudicial pretrial publicity resulting from the release of these documents. *Id.* at 546–548. In balancing these competing interests, the Special Master ordered disclosure and was affirmed by the district court. *Id.*

Except for the June, 1983 order that allowed disclosure of the summary judgment documents, the protective orders remain in full force and effect as to the private defendants. The remainder of the discovery items protected by those orders may be divided into two groups. One group consists of those documents and deposition testimony that were listed by one party or another in their pretrial orders as evidence that they intended to offer at trial. The pretrial orders were filed with the Court on or about April 23, 1984. Each pretrial order submitted by defendants included the following language:

> Accordingly, ... [defendant] hereby incorporates by reference into its PTO all such joint exhibits and witnesses identified by other defendants.
>
> ....
>
> The foregoing exhibit and witness lists *and the exhibits submitted therewith* constitute [defendant's] Preliminary Pretrial Order.

Defendants' Pretrial Orders, April 23, 1984 (emphasis added).

There is no question that the exhibits listed in the pretrial orders were filed with the Court, albeit under seal. The documents were not individually docketed by the Clerk's Office nor did they remain physically in possession of the Clerk.[3]

---

**3.** The documents accompanying the pretrial or- ders were delivered to the courthouse and were

■ The second category of documents represents the raw fruits of discovery. These documents have never been filed with the Court. Nonetheless, the documents are being maintained by the parties pursuant to court order. On September 25, 1984, following a number of fairness hearings throughout the nation, Chief Judge Weinstein issued a Preliminary Memorandum and Order on Settlement. In that ruling, the Court ordered the parties to file all of the raw fruits of discovery with the Court.

> The parties are expected to file all depositions and other papers obtained in discovery in a depository at the courthouse in accordance with directions to be provided by a Magistrate who will determine sealing and disposition subject to appeal to the court.

In re "Agent Orange" Product Liability Litigation, 597 F.Supp. 740, 770 (E.D.N.Y.1984). Rule 5(d) of the Federal Rules of Civil Procedure directs that all papers required to be served on the opposing party be filed with the court unless the court orders otherwise. In that event, the documents must still be filed "on order of the court or for use in the proceeding." Fed.R.Civ.P. 5(d). Despite the preliminary approval of the settlement, there is no doubt that jurisdiction remains in the district court now to require the filing of all of the materials obtained in discovery as contemplated by the Federal Rules.[4] Thus, pursuant to the Court's order all discovery materials are ordered filed with the Clerk of the Court, at such time as this Order shall be deemed final.

### B. Government Documents

On October 14, 1982, as noted earlier, a blanket protective order was issued which provided that all documents produced by any party as well as all depositions were to be treated confidentially. In June, 1983 the seal of confidentiality was lifted from all summary judgments documents. With the consent of the Government, the blanket protective order was also lifted in October, 1983 as to most Government documents and depositions. 99 F.R.D. 645 (E.D.N.Y. 1983).

VVA and Mr. Yannacone are now moving to lift the three remaining protective orders affecting Government documents. These orders include PTO 19 (May 21, 1980) which protects confidential medical records of the Veterans Administration; PTO 42, 96 F.R.D. 578 (E.D.N.Y.1983), which protects alleged trade secrets and confidential business information in the possession of the Environmental Protection Agency; and PTO 47, which applies to certain documents produced by the U.S. Department of Agriculture.

As a result of these motions, the United States consents to lifting the protective order embodied in PTO 47. A dispute remains as to materials covered by PTO 19 and PTO 42. In ordering the protection in PTO 19, the Court "weighed the public interest and the need for disclosure against the injury to the persons who are the subjects of the information contained in these documents, to the physician-patient relationship, and to the treatment services, ...." and determined that the latter considerations outweighed the public interest and need for disclosure. PTO 19 at 1. PTO 42, which covers the EPA material, describes documents submitted to the EPA by both parties and non-parties as required by various statutes and regulations. The

---

stored in a locked room on the sixth floor of the building. Keys were available to courthouse personnel and the parties. After the tentative settlement was reached on May 7, the parties removed the documents from the courthouse.

**4.** This procedure was explicitly approved by Judge Walter R. Mansfield, Chairman of the Advisory Committee on Civil Rules. In a letter published in the New York Times on August 2, 1980, Judge Mansfield wrote

... a judge would not be expected to excuse parties from filing materials in any case in which the public or the press has an interest, such as a Watergate or similar scandal. Moreover, should the public importance of the material not appear until after filing has been excused, it is expected that the judge, upon motion of the press or other interested persons, would order the parties to file the documents for inspection.

N.Y. Times, Aug. 2, 1980.

Special Master authorized a blanket protection for these materials, at the request of the Government, because of the large volume of material (estimated to be in excess of one million pages), and the delays and costs that would have been incurred in a document-by-document confidentiality analysis. *See* 96 F.R.D. 578 (E.D.N.Y.1983).

At oral argument on the instant motion, the Government took the position that the movants could seek this information from the respective agencies under the Freedom of Information Act. The Government assured the movants that if the agency were prepared to release the records, the protective orders would not prevent disclosure. Transcript ("Tr.") at 104–106. Thus, the agency, not the Court, would be the arbiter of confidentiality with respect to these records. The intervenors were amenable to this suggestion. Tr. at 106.

### III. Principles of Law

■ As noted above, class members represented by veterans groups and individual attorneys, as well as the Plaintiffs' Management Committee, are moving to lift these protective orders. For the purpose of this motion I conclude that parties, that is, both representative plaintiffs and class members, are seeking open access to the bulk of the discovery materials.[5] In support of their motion, the veterans have relied on a claimed First Amendment right of access to these materials or alternatively on a common law right of access. A review of the cases convinces me that neither of these principles provides sufficient support for their request.

### A. The First Amendment Right of Access to Discovery Materials

■ After *Seattle Times Co. v. Rhinehart*, —— U.S. ——, 104 S.Ct. 2199, 81 L.Ed.2d 17 *on remand* 98 Wash.2d 226, 654 P.2d 673, *cert. denied,* —— U.S. ——, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984), there can be no question that the First Amendment does not *require* open access to discovery materials. In *Seattle Times* the Court approved the imposition of a protective order, pursuant to Wash.S.Ct.C.R. 26(c), that prohibited the parties from disseminating information gathered in pretrial discovery.[6] The information in question concerned the size and nature of a religious foundation's membership, the names of its donors, and the amounts of their donations. After balancing petitioner's interest in free expression with respondents' interest in privacy and religious freedom, the Court approved the lower court's exercise of discretion in favor of imposing a protective order. In reaching this result the Court declared, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Id.* 104 S.Ct. at 2207. *See also Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 289, 61 L.Ed.2d 608 (1979) (the press and public can be constitutionally excluded from a pretrial suppression hearing); *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (no constitutional right of access to copy and disseminate judicial records or evidence used at trial); *International Paper Products Corp. v. Koons*, 325 F.2d 403, 407–408 (2d Cir.1963) (First Amendment does not affect trial court's right to restrain dissemination of pretrial discovery material). Thus, upon a showing of "good cause" the public access to discovery materials may be limited.

### B. Common Law Right of Access

Several courts have found a common law right of access to judicial records and documents based on the public's right to super-

---

**5.** Intervenors represent the VVA, and other class members. See p. 562, n. 1, *supra*. Members of the class seek disclosure not only for themselves, but also for the public at large, the media, the distribution planners and the Congress. Although disclosure is sought by parties, in the broad sense, they are seeking disclosure to non-parties as well as parties.

**6.** The language of this state statute is identical to that of Fed.R.Civ.P. 26(c). Discovery documents are therefore to be filed publicly unless good cause is shown for the issuance of a protective order.

vise, inspect, question or check the workings of the court. In *Seattle Times*, 104 S.Ct. at 2207–08, the Court noted that pretrial proceedings were not public proceedings at common law. The Court also stated that "pretrial depositions are not public components of a civil trial." *Id.* at 2207 (footnote omitted). Finally, the Court concluded that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 2208. Nonetheless, the notion that there exists a common law right of access to judicial records is well established. In *Nixon v. Warner Communications*, 435 U.S. at 597, 98 S.Ct. at 1311, the Court approved a general right to inspect and copy judicial records. One basis for this right was a "citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 598, 98 S.Ct. at 1312. The Court went on to hold, however, that this right of access is not absolute. Courts may limit public access to judicial records where, for example, they include a competitor's business information or would create unnecessary embarrassment or humiliation. *Id.* In *United States v. Criden*, 648 F.2d 814 (3d Cir.1981), *on appeal after remand*, 681 F.2d 919 (3d Cir.1982), the court stated that this right of access allowed "public supervision and inspection of *courtroom* proceedings, and the public's interest in learning of important matters." 648 F.2d 814, 822 (emphasis added). *See also Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983) ("An adjudication ... should ... be subject to public scrutiny.") (emphasis added).

■ This common law right of access to judicial records appears to be limited to those documents actually relied upon by a court in reaching a determination. In *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir.1980), Judge Wisdom noted that "[i]f the purpose of the common law right

of access is to check judicial abuses, ... then that right should only extend to materials upon which a judicial decision is based." *Id.* at 1299 n. 7. (citations omitted). *See also Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1016 (D.C.Cir. 1984) *reh'g en banc, opinion vacated*, 737 F.2d 1170 (D.C.Cir.1984) ("Though the lines delimiting the common law right of access are vague, we do not believe they include documents not used at trial."); *Nixon v. Warner Communications*, 435 U.S. at 597–98, 98 S.Ct. at 1311–12 (" [i]t is clear that the courts of this country recognize a general right to inspect ... public ... judicial records and documents." (footnotes omitted)).[7]

### C. A Statutory Right of Access

■ Fed.R.Civ.P. 26(c) presumes that discovery materials are open to the public. The Rule's requirement that the proponent of non-disclosure prove that good cause exists to limit public access to discovery material demonstrates that, in the absence of such proof, the discovery is open to the public. In *Seattle Times*, 104 S.Ct. at 2209, the Supreme Court tacitly affirmed the validity of the statutory presumption. The Court approved the trial court's finding, in the exercise of its discretion, that the respondent had shown good cause to require a protective order shielding certain information from public view. *Id.* Implicit in that analysis is the conclusion that if respondent had failed to demonstrate good cause, the information would have been available to the public.

■ Rule 5(d) of the Federal Rules requires that all discovery material be filed with the court unless the court orders otherwise. This filing is required because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." Fed.R.

---

7. Relying on a number of these decisions as well as *Zenith Radio Corp. v. Matsushita Elec. Co., Inc.*, 529 F.Supp. 866 (E.D.Pa.1981), this Court has previously stated that "documents produced through the discovery process and not yet submitted to the court are not necessarily part of the public record...." *In re Agent Orange*, 98 F.R.D. 539, 544 (E.D.N.Y.1983).

Civ.P. 5(d) Advisory Committee Note. Of course, federal district courts may adopt local rules that direct the parties *not* to file discovery materials except on order of the court. Rule 18(a) of the Joint Local Rules of the Southern and Eastern Districts of New York provides that

> [p]ursuant to Rule 5(d) of the Federal Rules of Civil Procedure, depositions, interrogatories, requests for documents, requests for admissions, and answers and responses shall not be filed with the Clerk's Office *except by order of the court.*

S.D.N.Y., E.D.N.Y.Civ.R. 18(a) (1983) (emphasis added).

■ In 1978, this district's present local rule was proposed by the Advisory Committee on Civil Rules with the accompanying note.

> [A]ny party may request that designated materials be filed, and the court may require filing on its own motion. It is intended that the court may order filing on its own motion at the request of a person who is not a party who desires access to public records, subject to the provisions of Rule 26(c).

Proposed Rule 5(d) Advisory Committee Note, Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, 77 F.R.D. 613, 622–23 (1978). Thus, both Rule 26(c) and Rule 5(d) require that discovery is presumptively open to public scrutiny unless a valid protective order directs otherwise.

IV. A Reexamination of the Protective Orders

A. Burden of Proof and the Nature of the Burden

■ There is no question that a Rule 26(c) order is subject to modification. *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291, 296 n. 7 (2d Cir.1979) *American Security Co. v. Shatterproof Glass Corp.*, 20 F.R.D. 196, 197 (D.Del.1957) ("The entry of a secrecy order ... is a matter within the Court's sound discretion and, once entered, subject to modification when deemed advisable by the Court."). Indeed, when issuing the original blanket protective order in October, 1982, the Special Master stated, "as discovery progresses and fundamental disputes are resolved, it may become desirable to lift this [protective] order." Special Master's Memorandum Opinion and Protective Order (October 14, 1982).

■ Any request to lift or modify a protective order should be "left to the sound discretion of the trial court." *Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir.) *cert. denied sub nom. Attorney General of Ohio v. Krause*, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982) (quoting *Nixon v. Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312). *See also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34 (C.D.Cal.1984). Thus, the decision to lift the protective orders in this litigation is discretionary. Nevertheless, every discretionary act must be governed by the applicable legal requirements.

A number of cases conclude that on a motion to lift a protective order the burden remains on the party seeking continued protection to show good cause for that continuation. The most recent case to address this issue is *Petroleum Products*, 101 F.R.D. at 34. There the district court held that the burden of showing good cause for a continued need for protection remained on the protected party. In reaching this determination the court specifically disagreed with the burden shifting approach approved by the court in *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 529 F.Supp. 866, 894 (E.D. Pa.1981). Unlike the plaintiffs in *Zenith*, the *Petroleum Products* intervenors were not parties to the action and thus could not have ratified the blanket protective orders or waived the right to "seek declassification *en masse* by failing to bring contemporaneous motions to declassify...." *Petroleum Products*, 101 F.R.D. at 43. The court also rejected the protected parties' argument that they had relied on the protective order in agreeing to produce the discovery, by noting that the discovery

would have been ordered by the court in any event if relevant. The court found that reversing the burden would "impose a significant and perhaps overpowering impairment on the public access right." *Id.* at 44. Finally, the court found no evidence in the record that the protected parties had ever shown that a "substantial and specific harm to their competitive positions would result" if the discovery in question were disclosed. *Id.* The court therefore left the burden of continuing to establish good cause on the party seeking continued protection. *See also Essex Wire Corp. v. Eastern Electric Sales Co.,* 48 F.R.D. 308 (E.D.Pa.1969).

However, another line of authority exists. In *Federal Deposit Insurance Corp. v. Ernst & Ernst,* 677 F.2d 230 (2d Cir. 1982), the court held that a confidentiality order can only be modified "if an extraordinary circumstance or 'compelling need' warrants the requested modification." *Id.* at 232 (citing *Martindell,* 594 F.2d at 296). *See also, Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Smith,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979) (party seeking dissolution of protective order bears burden of showing that intervening circumstances have removed potential prejudice).

*FDIC* and *Martindell,* both Second Circuit decisions, are factually distinguishable from the circumstances presented in this motion.[8] In *FDIC,* Chief Judge Weinstein ordered, at defendant's request and at the time of settlement, that the settlement terms should remain secret. Two years later intervenors essentially asked for reconsideration of that decision. The trial court stated, "[t]he balance then struck has not now changed. The intervenors have placed no substantial new weight on the scale." *In Re Franklin National Bank Securities Lit.,* 92 F.R.D. 468, 472 (E.D.N.Y.1981), *aff'd sub nom. Federal Deposit Insurance Corp. v. Ernst & Ernst,* 677 F.2d 230 (2d Cir.1982).

In *Martindell,* the parties had agreed that depositions would be sealed. After the litigation had closed, the Government, a non-party, sought the depositions of individual defendants, now targets of a criminal investigation. Defendants had not asserted any privilege during the depositions because of the protective order. The court held that unless the Government could show that the original protective order was improvidently granted or that some extraordinary circumstance or compelling need existed for these depositions, the witnesses were entitled to rely on the prior protective order.[9]

The distinguishing features of these cases are obvious. First, and most important, the court balanced the equities of disclosure of specific material prior to providing protection. Neither of these cases involved blanket protective orders where no showing of "good cause" is made. In *Franklin National Bank,* the protected material involved the terms of the settlement, not discovery material, and as such the standards of Rule 26(c) governing discovery were not controlling. Moreover, all

---

8. A third and more recent Second Circuit decision, *United States v. Davis,* 702 F.2d 418 (2d Cir.1983), is factually distinguishable from *FDIC* and *Martindell.* The court in *Davis* allowed a grand jury access to certain documents that were only protected by a limited, informal "understanding" that they would remain confidential. *Davis,* 702 F.2d at 420. A protective order for other documents was entered into by the Bankruptcy Court, but the Second Circuit held that the trial court was within its discretion when it released the documents to the grand jury because a provision of the order permitted one of the defendants to release the same information "to any person or entity." *Id.* at 423.

9. In *Iowa Beef,* the trial court had issued a protective order for confidential business records of plaintiff, Iowa Beef Processors, Inc. ("IBP"), that had been produced during pretrial discovery. Meanwhile, a House Subcommittee of the House Committee on Small Business subpoenaed these protected records from a defendant in that action. In an effort to comply with the subpoena the defendant moved to lift the protective order. The motion was granted by the trial court. The appellate court reversed, holding that defendant had failed to show "that intervening circumstances had in any way obviated the potential prejudice to IBP...." *Iowa Beef,* 601 F.2d at 954.

the circumstances regarding the protected party's need for confidentiality were known to the court at the time the order was issued. Such full knowledge is never possible when a protective order is issued in the course of pretrial discovery, a situation inevitably subject to change.

The other cases, *Martindell* and *Iowa Beef*, concern an investigative agency's desire to obtain information produced in civil litigation pursuant to promises of confidentiality. Because this information is obviously available to governmental investigating authorities through other means in which privileges could be asserted, it is appropriate to shift the burden to the authority seeking the discovery to show why it is entitled to this protected information. Here, the veterans, unlike the United States government, have no other means to acquire the information produced by the private defendants. Moreover, the information is not being sought in the context of a public investigation in which the assertion of a privilege might be of critical importance.

*Seattle Times* tips the balance in favor of not shifting the burden. The Court in *Seattle Times* approved a limitation on First Amendment rights upon a showing of good cause. In the absence of such a showing, continued protection would violate the First Amendment, particularly in this case, which is of great interest to the public and the media.

A recent law review article considered the question of the burden of proof as it relates to seeking modifications of protective orders. After noting the variety of standards advanced by the courts, the author stated his own view:

> Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking modification of a protective order is unwarranted. If access to protected fruits can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need

for the protected materials is minimal. When that is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

*Nonparty Access to Discovery Materials in Federal Courts*, 94 *Harv.L.Rev.* 1085, 1092 (1981). (footnotes omitted).

In view of *Seattle Times*, the circumstances of this case and this court's understanding of the law, the above-quoted standard seems appropriate. If access to the discovery materials here will cause no harm to legitimate secrecy interests under Rule 26(c), then there is no further justification for these protective orders. If the release of such materials would cause actual harm, then plaintiffs must show why the secrecy interests deserve less protection than they did when the order was granted.

### B. The Need for Disclosure Versus the Need for Continued Confidentiality in the "Agent Orange" Litigation

After a rather lengthy prelude it is time to reach the question before this court. In doing so I must treat separately the private and Government defendants and the specific protective orders referred to in Part I, pp. 2–4, *supra*.

#### 1. The Private Defendants: The Blanket Protective Order

As noted above, the blanket protective order was issued because of: the complexity of the litigation; the need for the cooperation among counsel; the need to expeditiously complete discovery; the burden on the court of reviewing documents; and the emotionalism surrounding the case. None of these reasons will now suffice to establish good cause pursuant to Rule 26(c) for the continued protection of the bulk of discovery taken pursuant to that order.

In their brief on this motion, defendants' main argument was that the materials to

which plaintiffs, class members and intervenors now seek access are raw fruits of discovery. "The documents are unculled, containing matters which may be irrelevant, immaterial, prejudicial or otherwise privileged from use as evidence." Defendants' Memorandum of Law in Opposition to Motion to Lift the Protective Orders Entered in These Proceedings ("Defendants Memorandum") at 12. Defendants then asserted the reliance argument, that is, that they relied on the blanket protective order in order to assist the court and the parties to expeditiously conclude the litigation. Defendants claim that it would now be unfair to order wholesale disclosure of material that has never been screened as to relevance and materiality. *Id.* at 18. Part of the unfairness would result, they assert, from the expense of claiming the need for protection as to individual documents when plaintiffs specifically agreed as part of the settlement to return the documents to the defendants after a specified period of time. *Id.* at 20. Finally, defendants' argue that discovery is still continuing in the opt-out actions, civilian actions, defendants' third party claims against the Government and plaintiffs' independent claims against the Government. *Id.* at 19. The defendants offered no additional reason for continued protection at oral argument on the motion. *See* Transcript of Hearing Before Magistrate, October 19, 1984.

 It is axiomatic that a protective order may only be issued or maintained upon a showing of "good cause." Fed.R. Civ.P. 26(c). Courts have routinely required the party seeking protection to show a particular and specific need for that protection. 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2035 at 265 (1970). A showing of serious harm either to business or non-business interests is re-

quired. Ordinarily, the time-consuming or costly nature of responding to discovery requests does not entitle a party to a protective order. *See Isaac v. Shell Oil Co.,* 83 F.R.D. 428 (E.D.Mich.1979); *Marshall v. S.K. Williams Co.,* 462 F.Supp. 722 (E.D. Wis.1978).

None of the reasons and arguments set forth by defendants is sufficient to warrant the continuance of the blanket protective order issued in October of 1982. Defendants assert that because of their reliance on the protective orders, the court should not compel them now to disclose unculled materials and require them to assume the expense of doing so. I give credence to the defendants' reliance argument in two respects. They argue that, in settling the case, they relied on not having to meet the unexpected and costly burden of later reviewing the discovery documents for confidential material. In addition, defendants claim that they produced the large volume of documents under the protective order to help ease the burden on the court, which otherwise would have had to spend a great deal of time making confidentiality determinations. I cannot find, however, that in itself defendants' reliance on the blanket protective order is sufficient to establish good cause for confidentiality when weighed against the presumption set forth in the Federal Rules that discovery should be conducted in public.

Defendants' first reliance argument is not persuasive because the settlement occurred literally on the eve of trial, when defendants had already conducted a thorough review of their documents.[10] Nor can I accept defendants' second argument because a permanent exception to the good cause requirement for cases with voluminous documents would make Rule 26(c)

---

**10.** Defendants also assert that they relied on or "bargained for" the continuation of the protective orders when they negotiated the Settlement Agreement. This argument is not persuasive for two reasons. First, the protection was conditional in that the documents could still be used at any future trial against the Government at which time the documents would become public. Thus, defendants were willing to settle this

action even assuming disclosure of the documents. Second, defendants never bargained for, nor could they have, a commitment that neither class members nor non-party intervenors would ever seek to have the protective orders lifted or modified. Their agreement for the eventual return of documents was solely with the Plaintiffs' Management Committee.

meaningless. Defendants do not need such an exception; they may still make a good cause showing for those documents they claim are confidential.

Defendants' next argument, that additional discovery in various actions require continuation of the blanket protective order, is disingenuous.[11] As the Magistrate supervising discovery I would surely be aware of any continuing discovery. With the exception of some discovery of the Government and the plaintiff in an action by a civilian, virtually no discovery is now in progress. Whatever discovery may yet occur should be extremely limited in view of the massive discovery undertaken in the now-settled class action. If the need for further particularized protective orders arises it can be handled in the context of the continuing discovery.

■ Even when good cause for the issuance of a protective order is shown, the decision to grant such an order lies in the discretion of the court. See *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y.1982). Thus, assuming *arguendo* that defendants have shown good cause for the continued protection of the discovery materials under the blanket protective order, a number of arguments have been advanced to show that the need for disclosure outweighs the need for further protection.

In recommending that the protective orders be lifted as to those materials submitted with the summary judgment motions, the Special Master enumerated a number of reasons favoring disclosure. At the risk of being repetitious, which is likely unavoidable in any event, I shall again quote those reasons.

The public has an interest in learning more about the nature of the issues raised by this complex litigation involving thousands of veterans and members of their families; the plaintiffs' claim of exposure to dioxin; and the chemical companies defense that the product was harmless, produced in accordance with government specifications during warfare. Indeed, apart from the Agent Orange litigation, dioxin has sparked much public interest and debate, as contamination has been discovered in the soil of the towns and cities around the country.... It is this gain in public understanding which heightens the public interest in the summary judgment documents....

98 F.R.D. 539, 547 (E.D.N.Y.1983). The same reasons are applicable to the remaining documents and depositions produced in discovery.

Intervenors have articulated their own reasons for seeking disclosure at this time. First, intervenors assert that the veterans, the press and the public should have an opportunity to see what evidence each party had discovered in preparation for trial. Intervenors point out that the settlement affects the rights of tens of thousands of veterans who have had no opportunity to review the evidence produced in the case. They claim that such review is now necessary so that the veterans might understand the need for and properly evaluate the settlement. I find this to be a compelling argument.

■ Ordinarily a party to an action does have the right to review all material produced in discovery except in the rare instance where a trade secret may not be disclosed even to a party.[12] In class ac-

---

11. At the December 10, 1984 conference, the Court dismissed a number of actions brought by plaintiffs who opted-out of the class action, as well as a number of actions brought by veterans against the Government. Motions to dismiss the remaining actions are scheduled for February 6, 1985 and March 18, 1985.

12. One court has held that limitations on a client's right to inspect discovery material may be unconstitutional. *See In re San Juan Star Co.*, 662 F.2d 108, 118 (1st Cir.1981) ("[T]he

significance of plaintiff's right to such information can hardly be overstated... [T]he fundamental right to a fair trial ... might be thought as a general rule to depend critically on one's ability to participate effectively in one's own litigation."); *Weck v. Cross*, 88 F.R.D. 325 (N.D. Ill.1980) (order permitting disclosure of agency investigation of defendant to plaintiffs and their counsel sufficiently protected agency's interest in confidentiality). However, in certain situations, it may be necessary to prohibit disclosure

tions, however, a Management Committee or lead counsel often assumes representation for the named plaintiffs. As such, those attorneys act on behalf of the entire class, not individual clients. In requiring public filing of discovery documents, in the absence of a showing of good cause for a protective order, the Advisory Committee noted that filing is required because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." Fed.R. Civ.P. 5(d) Advisory Committee Note.

The present situation is exactly the one contemplated by the Advisory Committee. The attorneys for the class have reviewed the documents and made a determination that settlement is appropriate.[13] Members of the class have not had that opportunity. In the absence of good cause for protection, the right of those class members to review the record weighs heavily in favor of disclosure. Continued dissatisfaction, suspicion and unease among the veterans and their families will surely continue in the absence of full disclosure. *See* Preliminary Memorandum and Order on Settlement, pp. 79–82.

Intervenors further argue that the significance of the case to the veterans who allege injury, the public, and historians also supports disclosure. In *Krause v. Rhodes,* 671 F.2d 212 (6th Cir.), *cert. denied sub nom. Attorney General of Ohio v.*

*Krause,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982), the appeals court reviewed a decision of the trial court ordering disclosure of discovery material that never became a part of the public record. The case involved the Ohio National Guards' killing of four students at Kent State University on May 4, 1970. After two trials that eventually resulted in a settlement, the court was asked to lift the protective orders. The trial court, in the exercise of its discretion, continued to protect that information protected by statute, namely grand jury material and personnel files of guardsmen. It also required the redaction of certain names and addresses that might cause harm or injury to individuals. The court ordered the remainder of the discovery material disclosed to the public. In affirming the trial judge's exercise of discretion, the Sixth Circuit noted that he had relied on "First Amendment interests and the historic nature of the events portrayed in the materials concerned...." *Id.* at 217.

Other courts have recognized the nature and degree of the public interest as a factor in balancing the interests of the parties who seek to protect or disclose information. In *United States v. General Motors Corp.,* 99 F.R.D. 610 (D.D.C.1983) the court wrote:

"litigation is, as a rule, supposed to be conducted in full view and the greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings."

*Id.* at 612. In *Brown & Williamson Tobacco Corp. v. Federal Trade Commis-*

---

to a client. For example, disclosure may be limited where it would present a significant risk of competitive harm. *See Chesa International Ltd. v. Fashion Associates, Inc.,* 425 F.Supp. 234 (S.D.N.Y.), *aff'd* 573 F.2d 1288. (2d Cir.1977).

**13.** It can be argued that all of the documents reviewed by the attorneys were relied on by the Court in approving the settlement. Ordinarily parties may settle their actions on consent. In a class action, however, the Court must approve the settlement. Fed.R.Civ.P. 23(e). Here the attorneys for the class urged the Court to approve the settlement. *See* Plaintiffs Fairness Brief, August 7, 1984. In doing so the attorneys inevitably relied on the thousands of documents they reviewed in deciding to settle the action. Similarly, the defendants were familiar with the

discovery when they offered the settlement to plaintiffs. As noted above, the Court did not review the documents filed under seal with the pretrial orders. Nonetheless, in hearing and relying on the views of counsel the Court vicariously relied on the material produced during discovery. Once a court has relied on material, that material should be disclosed. *See United States v. Hubbard,* 650 F.2d 293, 333 (D.C.Cir. 1981), *Wilk v. American Medical Association,* 635 F.2d 1295, 1299, n. 7 (7th Cir.1980). The peculiar circumstances of a class action settlement may require a broad interpretation of reliance. Here the veteran class members should be given access to the discovery material so that they may understand why their class representatives urged the Court to approve the settlement.

*sion*, 710 F.2d 1165 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984) the subject matter of the litigation weighed heavily in balancing the need for disclosure. In its decision the court wrote that the subject in litigation

> potentially involves the health of citizens who have an interest in knowing the accurate "tar" and nicotine content of the various brands of cigarettes on the market.

*Id.* at 1180.

The subject matter of this litigation certainly has a broader public interest element than the Kent State killings. The risks and dangers to which American soldiers were exposed during the most controversial war of this century is a matter of overwhelming public concern. It has often been said that this case is *sui generis*. It is. In the absence of a showing of good cause for protection, the requirement of public filing set forth in the Federal Rules must be strictly observed.

Intervenors next argue that disclosure would be helpful to Congress in considering Agent Orange victim compensation legislation. Whether this is helpful to individual plaintiffs or not, it does seem apparent that the Congress should be able to consider such important legislation on the basis of a full record.

Finally, intervenors contend that a full record would be useful to veterans groups in assisting those who will distribute the settlement funds. To the extent that this is so, it is yet another reason favoring full disclosure.

For all of the reasons set forth above the blanket protective order issued on October 14, 1982 is lifted. If defendants wish to designate any particular document or category of documents as confidential they may do so on notice, and by a showing of good cause. All such requests must be made within 60 days of such date as this order becomes final. Any document not so designated as of that time shall be unsealed. I will then review the documents designated as confidential to determine whether they are entitled to further protec-tion pursuant to the standards of Rule 26(c).

### 2. The Private Defendants: Commercial Information

On February 6, 1981 a protective order was issued allowing defendants to designate as "confidential" those records that they claimed contained "confidential developmental, business, research or commercial information." *See* PTO 27 para. 1. Intervenors and plaintiffs now seek access to such information.

As noted above, courts have required the moving party to show a particular and specific need for protection, especially when protection is sought pursuant to Fed.R. Civ.P. 26(c)(7). That rule allows a court to order "that a trade secret or other confidential research, development, or commercial information not be disclosed...." *Id.* In *United States v. International Business Machines Corp.*, 67 F.R.D. 40 (S.D.N.Y.1975), the court held that "an applicant will have to demonstrate that disclosure of allegedly confidential information will work a *clearly defined and very serious injury* to his business." *Id.* at 46 (emphasis in original). In *Parsons v. General Motors Corp.*, 85 F.R.D. 724, (N.D.Ga.1980), the court interpreted the rule as requiring "the party seeking the protective order ... [to] demonstrate that the material sought to be protected is confidential and that disclosure will create a competitive disadvantage for the party." *Id.* at 726 (footnote omitted).

Here, the defendants have never been required to make such a showing with regard to the commercial information that they claim is confidential and entitled to protection. Throughout the discovery the simple label "confidential" was sufficient to permit coverage under the 1981 protective order. Intervenors are now seeking access to such information. Surely they are entitled to the information unless good cause can be shown for its continued protection under the standards set forth above. Since the protection is now challenged, defendants should be required, for

the first time, to make a showing of the need for confidentiality.

It is noteworthy that much of this material may now be 20 to 30 years old. An important factor in determining whether disclosure will cause competitive harm is whether the information that the party seeks to protect is current or stale. For example, in *United States v. International Business Machines,* 67 F.R.D. at 48–49, the court held that information three to fifteen years old was stale and not entitled to protection. *See also Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21, 23 (S.D. N.Y.1971) (the need for a court's protection diminished because information was one year old); *Hecht v. Pro-Football, Inc.,* 46 F.R.D. 605, 606–07 (D.D.C.1969) (financial information up to three years old entitled to confidentiality and court's protection); *United States v. Lever Brothers Co.,* 193 F.Supp. 254 (S.D.N.Y.1961), *cert. denied,* 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962) (court held that information three to eight years old should not be protected).

For all the reasons set forth above, the protective order of February 6, 1981 is lifted. To the extent defendants still wish to designate any particular document or category of documents as confidential under Fed.R.Civ.P. 26(c)(7) they may do so on notice and by a showing of good cause. All such requests must be made within 60 days of the date this order becomes final. Any documents not so designated as of that time shall be unsealed. I will then review the documents designated as confidential, to determine whether they are entitled to protection in accordance with the standards of Rule 26(c)(7).

### 3. The Government: PTO 19 and PTO 42

The only categories of Government documents remaining under seal are those covered by PTO 19, confidential medical records of the Veterans Administration and PTO 42, which protects alleged trade secrets and business confidential information in the possession of the Environmental Protection Agency. As the Government points out, these documents are protected from disclosure by statute in the absence of a protective order. *See* United States' Memorandum in Response to Vietnam Veterans of America's Motions to Vacate or Modify Pretrial Protective Orders at 5–13. Many of the documents from the Veterans Administration ("VA") are protected by the Privacy Act, 5 U.S.C. § 552a (1976), the confidentiality statute for VA claims records, 38 U.S.C. § 3301 (Supp. V 1981), and for other medical records, 38 U.S.C. § 4132 (1976). Various statutes also protect many of the Environmental Protection Agency ("EPA") documents, such as the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136h (Supp. V 1981), the Trade Secrets Act, 18 U.S.C. § 1905 (Supp. V 1981), and the Privacy Act, 5 U.S.C. § 552a (1976).

These statutes provide varying standards for disclosure, and nearly all provide for court disclosure when appropriate.[14] The different disclosure standards and public policies embodied in the statutes make it inappropriate for this court to release a large volume of documents to the public *en masse.* For example, 38 U.S.C. § 4132(b)(2)(C) allows disclosure by the VA of confidential medical records

[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient or subject, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

*Id.* Congress' intent in drafting this statute was for courts to consider disclosure of

14. *See, e.g.,* 5 U.S.C. § 552a (1976); 38 U.S.C. § 3301(b)(2) (Supp. V 1981); 38 U.S.C. § 4132(b)(2)(C) (1976); 18 U.S.C. § 1905 (Supp. V. 1981).

these confidential documents on an individual basis, upon a specific application and showing of good cause by the party seeking disclosure. Releasing all such material for public inspection would violate individual privacy rights and defeat Congress' purpose in drafting the statute.

At least one statute that relates to the EPA documents, 7 U.S.C. § 136h, does not provide directly for court disclosure of agency documents. Subsection (b) states that

> [n]otwithstanding any other provisions of this subchapter, the Administrator shall not make public information which in his judgment contains or relates to trade secrets or commercial or financial information obtained from a person ... [that is] privileged or confidential....

*Id.* Subsection (c) of the statute then sets forth a procedure by which the agency notifies the individual who submitted the protected information that a request for its release has been made. The individual then has thirty days to bring a declaratory judgment action in the appropriate district court for continued statutory protection. *Id.* Such a well defined statutory policy should not be circumvented.

Several courts have dealt with the conflict between a request for documents filed in court and a statute protecting such information. The Eighth Circuit discussed the issue in the context of Title III[15] wiretaps in *In re Applications of Kansas City Star,* 666 F.2d 1168 (8th Cir.1981). The court outlined the text of the statute, its sealing requirements, and its legislative history and concluded that it should not disclose the documents. The statute contains a good cause standard similar to the one described above in 38 U.S.C. § 4132. Pursuant to statute, the court required the party seeking access to show good cause before it would consider releasing the documents.

> Disclosure of these documents is not a matter committed to the discretion of the district court, instead it is a matter which statutorily requires a factual finding of good cause. Access to judicial documents is based on "a general right to inspect and copy public records and documents," but "[i]t is uncontested ... that the right to inspect and copy judicial records is not absolute." ... Title III does not allow these documents to become "public" until there is a factual determination of good cause for their disclosure.

*Kansas City Star,* 666 F.2d at 1176–77 (quoting *Nixon v. Warner Communications,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978)) (ellipses in original, footnote omitted). *See also Krause v. Rhodes,* 671 F.2d at 217 (National Guard personnel files returned when protective order lifted); *United States v. International Business Machines Corp.,* 461 F.Supp. 732 (S.D.N.Y.1978) (documents requested from Commerce Department kept under seal and only open to those involved in litigation).

A review of the statutes and cases demonstrates that it is inappropriate to modify Pretrial Orders 19 and 42, which cover the EPA and VA documents. The proper method for obtaining disclosure is to request specific documents from the agencies through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). The FOIA states that agencies must make their records available upon request, 5 U.S.C. § 552(a)(3), unless the records fall within one of nine enumerated exemptions. 5 U.S.C. § 552(b). An individual who disagrees with an agency determination may petition the appropriate district court to conduct a *de novo* review of the request and compel production of the information. 5 U.S.C. § 552(a)(4)(B).

Intervenors acknowledge that filing FOIA requests is the proper procedure for gaining access to agency information. *See* Memorandum in Support of Motion of Vietnam Veterans of America to Vacate or Modify Pretrial Protective Orders, at 23–

---

**15.** Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (1976) (Title III).

26. They ask that the protective orders be lifted so that the agencies can process their FOIA requests without restraint.[16]

During oral argument, the Government consented to the intervenors' request that the agencies process FOIA requests that relate to documents sealed by the protective orders. Tr. 104–106. The Government stated that if the parties or intervenors make proper FOIA requests to the EPA or VA, neither agency will refuse to produce documents because of the protective orders. *Id.* The Government thus has satisfied the VVA's request. Mr. Yannacone, who represents additional veterans, stated that this arrangement was acceptable to him. Tr. 106.

Intervenors or other individuals seeking disclosure of documents protected by pretrial orders 19 and 42 must make a FOIA request pursuant to 5 U.S.C. § 552 (1976). The protective orders should then be lifted simultaneously with the production of the documents by the agencies, or in conjunction with a court order that compels their production.

V. Conclusion

The various protective orders issued in the pretrial phase of the "Agent Orange" litigation are modified in accordance with the rulings set forth above.

SO ORDERED.

---

**16.** Many of these Government documents should be released by the agency because of their age. *See, e.g.,* Dep't of State, Availability of Information and Records to the Public, 22 C.F.R. § 171.5 (1984) (department must release records to National Archives after 20 years).