FRANK TAVANO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tavano v. Commissioner
Docket No. 14570-88
United States Tax Court
T.C. Memo 1991-237; 1991 Tax Ct. Memo LEXIS 266; 61 T.C.M. (CCH) 2743; T.C.M. (RIA) 91237; May 29, 1991, Filed *266 An appropriate order will be issued and decision will be entered under Rule 155. Frank Tavano, pro se. Monica Miller, for the respondent. PARR, Judge.
PARR
MEMORANDUM OPINION Respondent determined deficiencies and additions to petitioner's individual Federal income taxes as follows: Additions to tax
under sections
Taxable year ending
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
December 31, 1985
$ 9,100
$  455.00
*
$ 2,275.00
December 31, 1986
$ 6,869
$  343.45
*
$ 1,717.25
Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references *267 are to the Tax Court Rules of Practice and Procedure. After concessions by both parties the issues remaining for decision are: (1) Whether the notice of deficiency is arbitrary and excessive thereby shifting the burden of going forward to respondent on all issues; (2) Whether petitioner is entitled to deduct the following in 1985: a) home computer expenses of $ 5,469, b) charitable contribution of $ 2,500, c) moving expenses of $ 25,530, [2]
d) capital losses of $ 16,250, and e) casualty loss of $ 5,810;
(3) Whether petitioner is entitled to deduct the following in 1986: a) charitable contribution of $ 1,500, b) miscellaneous expenses of $ 2,572, c) rental expenses of $ 16,141 and depreciation of $ 8,000, and d) capital losses of $ 806;
(4) Whether petitioner failed to include interest ($ 10), wages ($ 155), and worker's compensation ($ 350), in his 1986 income; (5) Whether petitioner is liable for the additions to tax for negligence under section 6653(a) and substantial understatement under section 6661(a) for both years in issue; and (6) Whether petitioner's motion for protective order to prevent disclosure of Tax Court records, pleadings, motions, or *268 any other documents regarding petitioner's case to third parties should be granted. Some of the facts are stipulated and found accordingly. The stipulations of facts and accompanying exhibits are incorporated herein. Petitioner resided in Windermere, Florida, at the time he filed his petition for redetermination in this Court. During 1984 and 1985 petitioner resided in Rancho Palos Verde, California, and was employed by Hughes Aircraft. In or around May 1985 petitioner accepted employment with Lockheed Electronics Company and moved to Florida. He worked for Lockheed until November 1986. Petitioner holds a degree in electrical engineering. Petitioner timely filed his individual Federal income tax returns for 1985 and 1986 with the Internal Revenue Service Center in Atlanta, Georgia. For convenience, *269 we combine our findings of fact and opinion for each issue/subissue. Burden of Proof
Petitioner alleges the notice of deficiency is arbitrary and excessive and, therefore, respondent bears the burden of going foward with the evidence on all issues. We do not agree. It is well settled that, except where otherwise provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, respondent's determinations generally are presumed correct, and the burden of proof and the burden of going forward with the evidence ordinarily rests with petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). When, however, respondent's determinations are shown to be arbitrary and excessive (e.g., without "factual foundation" or "rational basis"), the presumption evaporates and the burden of going forward with the evidence shifts to respondent. Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Berkery v. Commissioner, 91 T.C. 179, 186 (1988), affd. 872 F.2d 411 (3d Cir. 1989); Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984). Petitioner has not advanced any argument or presented any evidence *270 sufficient to show that respondent's determination is arbitrary or excessive, or that any exceptions to the general rule apply in this case. See Berkery v. Commissioner, 91 T.C. at 186, and the cases cited therein. Accordingly, petitioner bears the burden of going forward with the evidence, as well as the burden of proof, on all issues for decision. Rule 142(a). Deductions
Computer expenses
In or around February 1985, while an employee of Hughes, petitioner purchased a computer. Hughes did not reimburse petitioner for this expense. Petitioner deducted $ 5,469 [3] on his 1985 return as an ordinary and necessary business expense. Respondent disallowed the deduction in full. Petitioner alleges he is entitled to deduct the costs he incurred in acquiring his computer *271 because (1) it was essential to the performance of his duty as a professional engineer and employee of Hughes, and (2) it was required by his employer. Respondent contends that petitioner's expenses of purchasing his home computer, even though used in connection with the business of Hughes, were personal in nature, not ordinary or necessary to petitioner's trade or business of being an employee of Hughes; i.e., it was not placed in his home for the convenience of his employer or as a condition of his employment so he could properly perform his duties as an employee. We agree with respondent. Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on his trade or business. Petitioner is in the trade or business of being an employee. See Lucas v. Commissioner, 79 T.C. 1, 6 (1982); Primuth v. Commissioner, 54 T.C. 374, 377 (1970). Accordingly, he may deduct all ordinary and necessary expenses incurred in carrying on that trade or business. He may not, however, deduct personal expenses. In a letter from Theryl W. Bell (Mr. Bell), a Manufacturing Project Manager of *272 Hughes, to respondent dated September 26, 1989, Mr. Bell stated that petitioner was not required as a necessary condition of his employment to purchase his own computer and/or use it in his home. [4]
We are convinced that petitioner voluntarily undertook to purchase a computer, place it in his home, and use it for his convenience rather than the convenience of Hughes. Accordingly, we find petitioner is not entitled to deduct any portion of the *273 computer's cost, even if he could substantiate the cost, because it represents a nondeductible personal expense. Sec. 262(a); Heineman v. Commissioner, 82 T.C. 538, 542 (1984). Charitable contributions
Petitioner alleges he made charitable contributions to the Worldwide Church of God ($ 2,500 in 1985 and $ 1,500 in 1986), Smithsonian Institution, the First Baptist Church of Orlando (between $ 500 and $ 1,000), and public broadcasting television and radio during 1985 and 1986. Respondent contends petitioner's testimony is not credible on this subject especially in light of the testimony of John Wilson, the co-worker Officer for the Worldwide Church of God. Although we are not convinced petitioner made the amount of contributions claimed either on his return or alleged above, we find he made some contributions during the years in issue. Thus, petitioner is entitled to claim $ 500 in 1985 and $ 500 in 1986 in charitable contributions. See secs. 170(a) and (i). Moving expenses
In May 1985 Atlas Van Lines, Inc. (Atlas) loaded and moved 4,420 pounds of petitioner's personal belongings, including his car, from his home in California to his new *274 home in Orlando, Florida. Lockheed would have paid Atlas to move up to 12,000 pounds of household goods excluding household pets, coins, jewelry, plants, and other articles of peculiarly inherent or extraordinary value. Petitioner deducted $ 35,310.39 in moving expenses on his 1985 Federal income tax return. Respondent disallowed the entire deduction. Before trial the parties agreed that petitioner is entitled to deduct at least $ 3,846.98 in 1985. Additionally, respondent allowed petitioner a $ 123.14 deduction in 1986. Petitioner claims that Lockheed paid for or reimbursed a total of $ 9,097 [5] during 1985 and included same in his income for 1985, and that he incurred $ 25,530 [6] of expenses over and above that amount. He also claims he did not have any moving expenses in 1986. We do not agree. *275 On June 3, 1985, petitioner submitted his travel/relocation expense report to Lockheed claiming reimbursement for $ 1,154.25. Petitioner was reimbursed. Additionally, Lockheed paid Atlas $ 2,692.73 on July 12, 1985, and $ 123.14 in or around July 1986 for moving and storing petitioner's household effects. The $ 3,846.98 and $ 123.14 was included in petitioner's nonwage income for 1985 and 1986, respectively. The $ 5,000 bonus, however, is not a "moving expense," paid by Lockheed and deductible by petitioner. It is additional income to petitioner which, without evidence to the contrary, we find was included in his W-2 Form for 1985. Additionally, we find that the $ 25,530 figure is comprised of at least $ 12,640 worth of nondeductible personal or capital costs. [7] Sec. 262. Accordingly, we must decide whether any portion of the $ 12,890 remaining is deductible. Petitioner's evidence on his claim is confusing. Petitioner claims he expended an additional $ 10,184 [8] to move other household goods and personal items by jet, truck, Federal Express, UPS, taxi, limo, and personal courier; $ 875 on an unexpired lease; $ 1,100 for househunting trips; and at least $ 731 for attorney *276 fees, escrow fees, loan origination fees, and points. We agree that Lockheed would not pay to move "prohibited items" such as coins, plants, chemicals, mice, and fish. [9] *277 Accordingly, petitioner is entitled to deduct the expenses attributable to those items. We find petitioner incurred moving expenses [10] of $ 500. However, due to the lack of third-party documentation, we are not persuaded petitioner is entitled to deduct any additional amounts. Capital losses
Petitioner reported on his 1986 Schedule D that he purchased silver (coins or bullion) on April 12, 1982, for $ 5,211 and sold it on February 5, 1986, for $ 953. He claimed a $ 2,129 capital loss deduction on his 1986 return. Respondent contends petitioner neither purchased the silver in April 1982 from Crystal Coin, Inc., nor sold it in 1986. Additionally, and for the first time at trial, petitioner claimed he purchased 28 South African Krugerrands and 10 ounces of Engelhard silver bars on January 21, 1980, from Crystal Coin, Inc., in Wakefield, Massachusetts, for $ 23,492 and $ 5,340, respectively. Furthermore, he alleges he sold these items on February 12, 1985, to Ken Edwards (Mr. Edwards) of CNI (California Numismatics, Inc.) in Redondo Beach, California, for $ 11,732 and $ 850.80, respectively, and, therefore, he is entitled to a $ 3,000 capital loss in 1985. Respondent contends petitioner did not purchase the coins or silver bars and, therefore, could *278 not have sold them. This issue was tried by the mutual consent of the parties. Rule 41(b). Based on the credible testimony of Ms. Jo Anne Burque of Crystal Coin, Inc., and Mr. Edwards, we agree with respondent. Casualty loss
This issue was tried by the mutual consent of the parties. Rule 41(b). [11]
Petitioner claims that Atlas' subcontracting carrier damaged his household goods and automobile when it moved him from California to Florida. Additionally, he alleges that he attempted to file a claim against the subcontractor but was told he could not do so because "he signed off on those items." This is the only evidence petitioner presented *279 to substantiate his claimed loss. We find it insufficient to prove that a loss actually occurred or the amount thereof. Accordingly, we sustain respondent on this issue. Miscellaneous
Petitioner claimed a $ 3,021 deduction for miscellaneous expenses on his 1986 return, including $ 1,150 for computer software and an estimated $ 1,100 on travel, hotel, and meals attending the 1986 Monolithic Circuits Symposium in Baltimore, Maryland. Respondent concedes petitioner is entitled to deduct $ 449, but contends the balance is not allowable. We agree with respondent. Petitioner failed to prove that the acquisition of the computer software was in any manner related to his employment with Lockheed. Accordingly, he is not entitled to deduct the $ 1,150. Additionally, petitioner failed to provide any documentation substantiating that he actually attended the symposium. Moreover, even if he had proved he attended the symposium he, nevertheless, failed to satisfy the strict substantiation requirements under section 274(d). Thus, we are without any means to allocate the expenses between the meeting and the section 274(d) expenses. Accordingly, we find petitioner is not entitled *280 to any deduction. Rental and depreciation
Petitioner claimed deductions in 1986 for rental expenses and depreciation on two properties, Breezy Palms ($ 5,274) and Lake Drive ($ 18,867). [12]
We find the Breezy Palms property is and at all times was petitioner's personal residence. Accordingly, all costs, except the mortgage interest [13] attributable to it, are either personal or capital and therefore nondeductible. Secs. 262, 263. *281 Petitioner alleges he purchased the Lake Drive property on June 7, 1985, for $ 63,118, lived there until February or March of 1986, and leased it thereafter for at least two 7-month terms for approximately $ 450 per month. Petitioner included $ 4,590 in rental income on his 1986 Schedule E. Additionally, petitioner provided the names of the three tenants to whom he rented the property, although he failed to produce any other documentary evidence substantiating his rental activity. We find petitioner rented the Lake Drive property during 1986 and conclude he incurred some expenses in 1986. Accordingly, we allow petitioner to deduct the advertising, cleaning and maintenance, and insurance expenses as reported on his return. All other claimed deductions are disallowed, except the mortgage interest respondent allowed as a deduction on petitioner's Schedule A. Additional income
Income
Petitioner concedes he failed to include $ 10 of interest in his income for 1986. However, he alleges that (1) the $ 350 in unemployment compensation is not taxable income according to IRS Publication 17, [14] and (2) he did not have an additional $ 155 in wages. *282 (1) Unemployment compensation
Section 85 provides as follows: (a) In General. -- If the sum for the taxable year of the adjusted gross income of the taxpayer (determined without regard to this section, section 86, and section 221) and the unemployment compensation exceeds the base amount, gross income for the taxable year includes unemployment compensation in an amount equal to the lesser of -- (1) one-half of the amount of the excess of such sum over the base amount, or (2) the amount of the unemployment compensation.
Petitioner's base amount is $ 12,000. See sec. 85(b)(1). In accordance with this section, the $ 350 is fully includable in petitioner's income for the year. Accordingly, we sustain respondent's determination on this issue. (2) Additional taxable income
Petitioner's W-2 Form for 1986 indicates he received $ 39,613.54 in "wages, tips, other compensation, and paid social security on $ 39,458.96 in wages. Petitioner reported the latter amount as his total income from wages, tips, and other compensation. Petitioner's only explanation is that "if [the $ 155] were for wage income, the petitioner would have been taxed FICA on this amount." *283 Petitioner fails to understand that although the $ 155 is not "wages," it may be "other compensation." Without additional evidence to the contrary, we find the W-2 Form introduced at trial correctly reflects petitioner's income for that year. Accordingly, we find for respondent on this amount. Additions to tax
Negligence
The next issue for decision is whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (a)(2) (section 6653(a)(1)(A) and (B) for 1986). Petitioner bears the burden of proving that the underpayment was not due to negligence or intentional disregard of the rules or regulations. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Respondent contends that petitioner is liable for the section 6653(a) additions because, among other things, he (1) deducted personal expenses and other expenses knowing they were not authorized by the Internal Revenue Code; (2) deducted charitable contributions without adequately substantiating the donee or the amount; and (3) failed to maintain adequate books and records to substantiate his claimed deductions. Negligence is defined as a failure to *284 exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985). See Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). We agree that petitioner failed to exercise due care by claiming deductions in excess of what he could adequately substantiate or reconstruct, as required by section 6001 and the regulations promulgated thereunder. Although petitioner's lack of actual records is understandable if the metal box stolen from his home in 1988 contained his tax records, he, nevertheless, failed to obtain documents from third parties to adequately reconstruct his expenses. We also agree petitioner deducted expenses he must have realized, in light of his education and business experience, were personal. Accordingly, we find petitioner liable for the addition to tax under section 6653(a)(1) and (a)(2) (section 6653(a)(1)(A) and (B) for 1986) on the entire *285 redetermined deficiency. Substantial understatement
The next issue for decision is whether petitioner is liable for the addition to tax under section 6661(a) for substantial understatement of income tax with respect to the taxable years in issue. Petitioner bears the burden of proof on this issue. Rule 142(a). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. The amount of the understatement is reduced for section 6661 purposes by the portion of the understatement which is attributable to the taxpayer's treatment of an item for which there was "substantial authority," or if the relevant facts affecting the item's tax treatment are "adequately disclosed" on the return or in a statement attached thereto. Sec. 6661(b)(2)(B)(i) and (ii). In his notice of deficiency, respondent determined that, due to the adjustments made to petitioner's Federal income tax returns for 1985 and 1986, he was liable for the 25-percent [15] addition to tax pursuant to section 6661(a). Petitioner neither offered "substantial authority" for his understatement, nor did he "adequately disclose" any facts affecting *286 the tax treatment of the items in issue. Accordingly, he is liable for the addition to tax under section 6661. Protective Order
On October 12, 1989, petitioner moved under Rule 103 for a protective order as follows: 1. A protective order to prevent any disclosure of Tax Court records, pleadings, motions, or any other documents regarding the Petitioner's case to third parties. 2. A protective order to prevent the Respondent from disclosing any information to third party contacts regarding the above-styled case. From its disclosure of information to date, the Respondent has caused irreparable damage to the petitioner's business, and may have interfered with other civil litigations in County Court.
The granting of the order *287 would prohibit the unauthorized transfer of confidential information received from petitioner to any third party without permission from either the Court or petitioner. See sec. 7461. As a general rule, common law, statutory law, and the U.S. Constitution support the proposition that official records of all courts, including this Court, shall be open and available to the public for inspection and copying. Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978); In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust, 101 F.R.D. 34, 38 (C.D. Cal. 1984); sec. 7461. The right to inspect and copy judicial records is not, however, absolute. Willie Nelson Music Co. v. Commissioner, 85 T.C. 914, 918 (1985). This Court, in its discretion, may seal the record or portions thereof where justice so requires and the party seeking such relief demonstrates good cause. American Telephone & Telegraph Co., v. Grady, 594 F.2d 594, 596 (7th Cir. 1979); Rule 103(a). See Belo Broadcasting Corp. v. Clark, 654 F.2d 423, 430-434 (5th Cir. 1981). To determine whether the sealing *288 of any documents is appropriate we must weigh the public's interest in access to the documents against the interest of the party seeking the protective order, i.e., petitioner. Nixon v. Warner Communications, Inc., 435 U.S. at 602; Willie Nelson Music Co. v. Commissioner, 85 T.C. at 919. Petitioner must produce "appropriate testimony and factual data" to support claims of harm that would occur as a consequence of disclosure. Estate of Yaeger v. Commissioner, 92 T.C. 180 at 189, citing Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982); United States v United Fruit Co., 410 F.2d 553, 557 n.11 (5th Cir. 1969). He may not rely on conclusory or unsupported statements to establish good cause. Willie Nelson Music Co. v. Commissioner, 85 T.C. at 920; Estate of Yeager, supra, citing In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust, 101 F.R.D. 34, 44 (C.D. Cal. 1984). Moreover, merely asserting annoyance and embarrassment is wholly insufficient to demonstrate good cause. See Willie Nelson Music Co. v. Commissioner, 85 T.C. at 925. *289 Good cause has been demonstrated and records sealed where patents, trade secrets, or confidential information are involved or where an individual's business reputation will be hurt. See Willie Nelson Music Co. v. Commissioner, 85 T.C. at 921. A showing that the information would harm an individual's personal reputation is generally not sufficient to overcome the strong common law presumption in favor of access to court records. Willie Nelson Music Co. v. Commissioner, supra.
Petitioner stated that he has a civil lawsuit pending with his former employer (Lockheed) and does not want Lockheed to know the facts of this case. The trial involving Lockheed was to be held in November 1989. Petitioner advances no other facts to support his motion. Without more, we find petitioner has not demonstrated any harm (financial or otherwise) that his business has suffered or will suffer if his motion is denied. Accordingly, we deny his motion for a protective order in this case. To reflect the foregoing, An appropriate order will be issued and decision *290 will be entered under Rule 155. Footnotes
1. For taxable year 1986 the addition to tax for negligence is section 6653(a)(1)(A) and (B), rather than 6653(a)(1) and (2). Any reference to section 6653(a) for the 1985 and 1986 tax years refers to section 6653(a)(1) and (2) and section 6653(a)(1)(A) and (B), respectively.↩
*. 50 percent of the interest payable on the entire deficiency.↩
2. The $ 25,530 is calculated as follows: $ 35,310 (the amount claimed) minus $ 3,970 (the total amount respondent allows) and $ 5,810 (the amount petitioner claims is a casualty loss incurred during the move).↩
3. He reconstructed the following in the interrogatories: ↩
1985
1986 Software
$   153
$ 1,150
Computer
3,800
-
Printer
492
-
Graphics Card
188
-
Monitor
595
-
Cables
148
-
Other
93
$ 5,469
$ 1,150
4. The September 26, 1989, letter stated that (1) "Use of a home computer in order to perform the duties of his [Mr. Tavano's] employment was not required by the Company;" (2) "Mr. Tavano was not required by the Microwave Products Division to have a home computer in 1984 and 1985;" (3) "The Company typically discourages employees from taking Company documents to and from the work site, due to security and proprietary information related issues;" and (4) petitioner had access to three computers, which included a main frame and two desk tops, while employed with Hughes Aircraft.↩
5. The $ 9,097 is comprised of $ 4,097 in moving costs and a $ 5,000 "Employee Incentive Bonus."↩
6. This figure was arrived at by subtracting the total amounts allowed as a deduction, i.e., $ 3,970 rounded, from the amount petitioner estimates he is now entitled to, $ 29,500, i.e., the average of $ 29,000 and $ 30,000. He testified that he amended his 1985 return reducing the moving expenses from $ 35,310 to between $ 29,000 and $ 30,000.↩
7. The $ 12,640 is made up of the following: (1) $ 11,725 of expenses incurred for the purchase price of petitioner's new home in Florida which includes the downpayment; (2) $ 70 for car tags; (3) $ 25 for driver's license; and (4) $ 820 to refit carpets and draperies at his new home.↩
8. $ 13,000 minus ($ 2,693 plus $ 123 rounded).↩
9. Petitioner stated that Lockheed would not pay to move approximately 60 to 75 percent of his possessions, including his gold and silver coins and bullion, 2 grand pianos, grandfather clock collection, firearms, 29 pyraponic growth chambers with 29 plants, chemicals, 47 lab mice, ham radio antennas, satellite dish antenna, 2 radio telescope interferometers, and an aquarium with various fish.↩
10. Petitioner provided respondent with the names of at least 4 separate companies he used to move these items.↩
11. Petitioner claims he initially and incorrectly included the loss deduction as a moving expense, and upon discovering his mistake, filed an amended return reducing his moving expenses by the loss amount and claiming a casualty loss deduction. Respondent has no record of receiving the amended return, and petitioner was not able to present a copy of the return at trial.↩
12. Petitioner deducted the following amounts on the Lake Drive property on his 1986 Schedule E: ↩
Advertising
$     38
Auto and travel
3,811
Cleaning and maintenance
285
Commissions
179
Insurance
225
Legal and other professional fees
899
Mortgage interest paid to financial institutions
6,480
Repairs
124
Taxes
548
Utilities
28
Wages and salaries
120
Garbage
130
$ 12,867
Depreciation
6,000
$ 18,867
13. Respondent allowed petitioner to deduct mortgage interest (of $ 1,587) on the Breezy Palms and Lake Drive properties on his Schedule A.↩
14. IRS Publication 17 provides as follows: Amount to Include In Income. You must report the total unemployment compensation you received during the year on line 20a, Form 1040, * * *. However, you include in your gross income on line 20b, Form 1040, * * * the lesser of: 1) Your total unemployment compensation, or 2) One-half of the amount by which the sum of your adjusted gross income (figured as explained later) plus your total unemployment compensation is more than the base amount that applies to you. For purposes of determining taxable unemployment compensation, figure your adjusted gross income without: 1) Any amount of unemployment compensation, 2) Any taxable social security * * *, and 3) Any deduction for a married couple when both work.↩
15. The Omnibus Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(a), 100 Stat. 1874, 1951, increased the section 6661(a)↩ addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after October 21, 1986.